UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATALIE JIREK, NANCY LEDINSKY, and JUDY TESKE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS LP, <br><br> Defendant. | Case No. 1:21-cv-06929 <br><br> **Judge Sara L. Ellis** <br><br> Magistrate Judge Sunil. R. Harjani |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiffs, Natalie Jirek, Nancy Ledinsky, and Judy Teske, ("Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Plaintiff Class"), have properly stated their claims for relief under the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) ("EPA"), and the Illinois Equal Pay Act, 820 ILCS § 112/1, *et seq.* ("IEPA"). Notice pleading requires that a plaintiff simply include sufficient information to put the defendant on notice of the basis of her claims. A plaintiff is not required to prove her case with the filing of her complaint; rather, she merely needs to provide a basis upon which relief can hypothetically be granted as a matter of law. Defendant's liability is plausible – particularly when all facts are viewed in a light most favorable to Plaintiffs, as they must be. Accordingly, Plaintiffs are entitled to pursue and present evidence to prove these factual allegations at trial. Therefore, the Court should deny Defendant's Motion to Dismiss or, alternately, grant Plaintiffs leave to replead.

**FACTUAL ALLEGATIONS**

Plaintiffs restate and incorporate the factual allegations as set forth in their First Amended Complaint ("Complaint"). For purposes of Defendant's Motion to Dismiss, the Court must accept

Plaintiffs' allegations in the Complaint as true and disregard any contrary or additional facts alleged by the Defendant.

## STANDARD OF REVIEW

In assessing a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all inferences in the plaintiff's favor. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). A plaintiff "is not required to prove her case in her complaint . . . the Federal Rules still follow a notice-pleading regime, and they do not 'impose a probability requirement on plaintiffs.'" *Motorola, Inc. v. Lemko Corp.*, 2010 WL 960348, at *3 (N.D. Ill. Mar. 15, 2010) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). In fact, to survive a Rule 12(b)(6) motion to dismiss, the complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Still, the complaint must state a claim that is "'plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face where the plaintiff "'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not akin to a probability requirement. *Iqbal*, 556 U.S. at 678. Nor does the pleading standard require a complaint to contain "detailed factual allegations." *Twombly*, 550 U.S. at 555. "A dismissal under Rule should is proper only where the plaintiff can prove no set of facts that would entitle [her] to relief." *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).

**ARGUMENT**

Plaintiffs have met their burden to put Defendant on notice of their claims by pleading sufficient facts to state claims that are plausible on their face. The EPA provides that an employer may not discriminate on the basis of sex by paying wages "at a rate less than the rate at which [it] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]" 29 U.S.C. § 206(d). Similarly, the IEPA states that employers may not discriminate "on the basis of sex by paying wages to an employee at a rate less than the rate at which the employer pays wages to another employee of the opposite sex for the same or substantially similar work on jobs the performance of which requires substantially similar skill, effort, and responsibility, and which are performed under similar working conditions[.]" 820 ILCS § 112/10. The same standards are used to analyze claims under the EPA and IEPA. *Karlo v. St. Augustine Coll.*, 2021 WL 2156438, at *2 (N.D. Ill. May 27, 2021).

In order to adequately plead a violation of these statutes, a plaintiff need only allege "'(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions.'" *Id.* at *3 (quoting *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017)). "The plaintiff does not have to 'make a prima facie case of discrimination, just of unequal pay.'" *Id.* (quoting *Leong v. SAP Am., Inc.*, 67 F. Supp. 3d 972, 983 (N.D. Ill. 2014)). At this stage, Plaintiffs are not required to forecast evidence or prove their case against Defendant, but need only provide enough details to give the Defendant fair notice and show that the claim is plausible. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)

3

(reaffirming "the minimal pleading standard for simple claims"). Indeed, simple claims of sex discrimination do not require a fuller set of facts to render them plausible. *See id*.

Defendant here attempts to heighten the pleading requirements for Plaintiffs to demand they establish a complete case prior to any discovery taking place. Despite Defendant's efforts, Plaintiffs have met what is required of them at this stage in the proceedings – which is simply putting Defendant on notice of their claims. In fact, Defendant's detailed Motion betrays that it is acutely aware of exactly what Plaintiffs are alleging. Therefore, this Court should deny their motion to dismiss. Alternatively, Plaintiffs should be granted leave to amend.

### A. Plaintiffs Put Defendant on Notice by Adequately Alleging Pay Discrimination Under the Equal Pay Act and Illinois Equal Pay Act.

#### i. Plaintiffs' Equal Pay Act Claims Are Not Time-Barred.

Defendant's first argument regarding the timeliness of Plaintiffs' EPA claims is without merit. Defendant is correct that a three-year statute of limitations applies to claims that a defendant willfully violated the EPA. *See* 29 U.S.C. § 255(a); *Karlo*, 2021 WL 2156438, at *2. However, "[e]vidence of wage discrimination need not be confined to the EPA's . . . limitation period . . . for a court may consider relevant evidence from before that period while assessing the worker's claims." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 205 (1974)).

Here, Defendant mistakes Plaintiffs' mere *evidence* of discriminatory pay practices for the totality of Plaintiffs' actual claims. Plaintiffs affirmatively state that they are solely challenging Defendant's pay structure within the relevant limitations period. Specifically, Plaintiffs note that *after* the OFCCP's findings regarding Defendant's discriminatory pay practices and within the three years preceding their Complaint, Defendant failed to alter its pay structure. FAC ¶¶ 37, 39. The OFCCP's findings coupled with the Plaintiffs' allegations are circumstantial evidence that

4

such discriminatory pay practices continue to the current day. *Id.* In their FAC, Plaintiffs also allege that Defendant failed to adjust Plaintiff Ledinsky's pay despite learning that she was being paid less than a male employee in the same position. *Id.* ¶¶ 30–31, 40. Although these examples occurred prior to the limitations period during which Plaintiffs can collect damages, they showcase Defendant's existing violations that continued into and throughout the limitations period via its use of the same pay structure. The OFCCP findings further demonstrate that Defendant knew that its pay structure constituted unlawful pay discrimination, yet knowingly continued its unlawful pay practices. Thus, Plaintiffs' claims under the EPA are timely.

        ii.    **Plaintiffs' Plausible Allegations Show They May Establish the Elements of both an EPA and an IEPA Claim at Trial.**

To reiterate, in order to adequately plead a violation of the EPA or IEPA, a plaintiff need only "plausibly allege" that (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions.'" *Karlo*, 2021 WL 2156438, at *3. Although a plaintiff alleging unequal pay must point to some sort of comparator to support her claim, she is not required to plead "unknown details" such as the names or salaries of specific colleagues. *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 780 (7th Cir.2007) ("[A] plaintiff might sometimes have a right to relief without knowing every factual detail supporting its right; requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove its claim.").

Plaintiffs exceeded their pleading requirements by describing certain pieces of evidence supporting their claims in the FAC. Defendant now attempts to use this information against the Plaintiffs by incorrectly asserting that those examples are the only evidence that could plausibly exist – even though no discovery has taken place and the notice pleading requirements do not

require the Plaintiffs to plead such facts. But those examples are just what they purport to be – examples. They are not the totality of the evidence that Plaintiffs expect to show at trial, after having had the benefit of discovery, in a case where Defendant (through its own payroll records) possesses most of the relevant evidence. Indeed, Defendant appears to be attempting to bring a Rule 56 Motion for Summary Judgment dressed up as a Rule 12(b)(6) Motion to Dismiss.

Regarding the first element for all counts, Plaintiffs are in a unique position wherein a governmental body, the OFCCP, has already determined that they and other female employees were paid less than male employees based on their sex at one point in time while working for Defendant. D.E. 22-1. Although this investigation occurred in 2016 and only pertained to two job classifications, Plaintiffs allege that Defendant's discriminatory pay structure did not change after that time and that all job classifications were subject to the same pay structure. FAC ¶ 37. It is reasonable to infer that Defendant continued to illegally pay women less than men in all sales positions.[1] Plaintiff Ledinsky's regional manager made comments confirming that – based on his personal knowledge – Defendant paid its female employees less than its male employees. *Id.* ¶¶ 24, 36. As a regional manager, his statements constitute direct admission by an agent of the Defendant, i.e., direct evidence of Defendant's unlawful practices. Plaintiff Ledinsky further described meeting a man with the same work experience and job classification as her, yet reportedly, he was paid a higher salary than she. *Id.* ¶ 29.

---

[1] Despite Defendant's assertions that the OFCCP's limited findings evidence the lack of a wider-discriminatory pay structure, the documents in Plaintiffs' possession equally support the opposite conclusion. The OFCCP never states that it conducted an evaluation of all of Defendant's job classifications and found that only the listed two contained illegal pay disparities; it simply says that its investigation of those two classifications resulted in findings of an illegal pay disparity. D.E. 22-1. Because the same pay structure applied to all sales positions, Plaintiffs believe all female sales employees were paid in a discriminatory manner. To countenance Defendant's reading of the OFCCP's findings would be to invert the standards of a 12(b)(6) motion to erroneously draw all reasonable inferences in favor of the Defendant.

Plaintiff have also satisfied their burden to plead sufficient facts regarding the second and third elements. Plaintiffs explain that they had three primary job duties: marketing AstraZeneca products, selling those products, and servicing their client accounts. *Id.* ¶ 18. These job duties were uniform across all the positions that Plaintiffs held throughout their employment with Defendant, irrespective of their job titles. *Id.* The fact that the various sales positions at AstraZeneca were all centered around the same job duties shows that similar skill, effort, and responsibilities were required for all sales positions, and thus demonstrates Plaintiffs have plausibly pled sufficient facts to satisfy the second and third elements of their claims.

This assertion is even less debatable for Plaintiff's alternate proposed class and collective, which is comprised of only Level 4 Specialty Care Sales Representatives. That group includes only those sales employees whose main duties were to market and sell specialty care AstraZeneca products and service client accounts, which limits the comparators to even more narrow, specific job duties. Moreover, the OFCCP already concluded that the men to whom the female employees were compared were in "similar positions" to the underpaid female employees in that group. *See* D.E. 22-1 ("OFCCP conducted a review of the compensation practices for Specialty Care Sales Representative Level 4 . . . positions . . . and found that, as of October 1, 2016, on average AstraZeneca paid 295 women $2,182.07 less than 228 men in *similar positions*, which was statistically significant[.]") (emphasis added). Therefore, Plaintiffs met their burden to allege sufficient information to support all necessary elements of their EPA and IEPA claims.

Still, Defendant argues that Plaintiffs' claims should be dismissed because they failed to allege specific facts proving that men were paid higher wages than female employees who performed equal work. In support of this argument, Defendant cites *EEOC v. Port Authority of New York & New Jersey*, 768 F.3d 247 (2d Cir. 2014). There, the Second Circuit found that the

7

EEOC failed to meet its burden to survive the defendant's Rule 12(c) motion to dismiss where it did not allege sufficient facts to show that male comparators' job duties were substantially equal to the plaintiffs' job duties. *Id.* at 249. In its reasoning, the court emphasized that the EEOC had conducted a *three-year investigation* into the defendant, yet it was only able to cite "broad generalizations," such as that the defendant "required all of its nonsupervisory attorneys to have similar "experience, training, education, or ability," bar admission, and the capacity to call upon "problem-solving and analytical skills" as well as "professional judgment," which were "untethered from allegations regarding Port Authority attorneys' *actual* job duties[.]" *Id.* at 256–57 (emphasis in original).

Unlike the EEOC in *Port Authority*, Plaintiffs have not had the benefit of three years in which to investigate their claims, but rather have been denied access to discovery of any kind by Defendant.[2] At this early stage in the litigation process and pre-discovery phase, Plaintiffs can only base their claims on their own experiences, publicly available information, and reasonable inferences drawn therefrom. Taken together, this information sufficiently demonstrates that all sales people at AstraZeneca perform substantially equal work. Unlike the deficient complaint in *Port Authority* that referred only to generalized skills, here Plaintiffs point to their main job duties for each position held while at AstraZeneca: marketing AstraZeneca products, selling AstraZeneca products, and servicing their client accounts. FAC ¶ 18. These specific job duties represent the precise fatal missing content from the EEOC's complaint in *Port Authority*.

Defendant also attempts to draw a parallel to *Karlo v. St. Augustine College*. 2021 WL 2156438. In *Karlo*, the court rejected the plaintiff's attempt to state EPA and IEPA claims where her complaint alleged description-less "male counterparts." *Id.* at *4. The court explained that it

---

[2] Defendant opposed Plaintiffs' Motion to Lift Stay of Discovery at a hearing on May 4, 2022, and the Court denied Plaintiffs' motion, D.E. 35.

8

was "unclear from the Complaint whether [the male counterparts] were faculty members, how much they were paid, what their work entailed, or under what conditions they worked." *Id.* In contrast, Plaintiffs here offer that Defendant employed men in similar sales positions to them, so the Court knows exactly what positions to which Plaintiffs compare themselves. FAC ¶¶ 18–21. Plaintiffs add reference to the OFCCP's investigation into Defendant that concluded that men were paid more than women in "similar positions," and that that pay disparity was based on sex. *Id.* ¶¶ 32–34. Additionally, Plaintiff Ledinsky provided the example of a man she met who was in her same job classification but whom she believed had a higher salary. *Id.* ¶¶ 27–30. As discussed *supra*, Plaintiffs also assert that all sales positions performed the same main job duties, implying that any man in said position would be performing those same job duties. *Id.* ¶ 18. Contrary to what Defendant would like the Court to believe, Plaintiffs' allegations are far more detailed than simply citing "male counterparts."

*Boyd v. City of Chicago*, 2021 WL 2012234 (N.D. Ill. May 20, 2021), is likewise distinguishable. There, the plaintiff, a mailroom employee responsible for picking up and dropping off mail and boxes at various City locations, provided three male comparators in her complaint: a concrete laborer, a City Assistant Commissioner, and a firefighter. *Id.* at *1. The court noted that the wildly differing job titles allowed it to infer that the named comparators had significant different job duties than those of the plaintiff. *Id.* at *2. In the instant matter, Plaintiffs compare themselves only to male sales employees, the same title which they themselves held throughout their employment at AstraZeneca, and all of whom performed the same main job duties and were subject to the same level-based pay structure. FAC ¶¶ 18–23. Accordingly, *Boyd* is inapplicable to the instant matter.

        iii.    **Plaintiffs' Claims Meet the Physical Limitations of the Equal Pay Act and Illinois Equal Pay Act.**

Defendant also asserts Plaintiffs' claims do not fall within the physical limitations set by the EPA and IEPA. The EPA limits its restriction on pay discrimination to employees within the same "establishment." 29 U.S.C. § 206(d)(1). The EEOC has explained that the word "establishment" "refers to a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business." *Toomey v. Car-X Assocs. Corp.*, 2013 WL 5448047, at *6 (N.D. Ill. Sept. 30, 2013) (citing 29 C.F.R. § 1620.9(a)). Accordingly, each physically separate place of business is ordinarily considered a separate establishment. *Id.* Still, the EEOC has also clarified that there are circumstances under which a single establishment may include operations at more than one physical location. *Id.* (citing 29 C.F.R. § 1620.9(b)). Such examples include employers that utilize a central administrative unit that hires all employees, sets wages, and assigns the location of employment; where employees may frequently interchange work locations; and where daily duties are virtually identical and performed under similar working conditions. *Id.*; *see, e.g.*, *Smith v. Allstate Ins. Corp.*, 24 F.Supp.2d 870, 879 (N.D. Ill. 1998) (multiple offices constituted a single establishment under the EPA where compensation, job assignments, and promotions were all conducted on a regional basis). This is precisely the type of inquiry that would take place at the Rule 56, not 12(b)(6), stage.

Plaintiffs' First Amended Complaint includes sufficient facts to plausibly show they fall within both statutes' physical limitations. Regarding the EPA, Plaintiffs plainly state that they were all employees of AstraZeneca, a Delaware company with its principal office located in Wilmington, Delaware. FAC ¶¶ 8, 10. Despite their various positions during their tenure with Defendant, Plaintiffs make no mention whatsoever of any other possible establishment that employed them or the comparators they cite. The inference that the putative collectives and classes were employees of the same establishment is further supported by the language in the Conciliation

Agreement between the OFCCP and AstraZeneca. That agreement notes that the OFCCP "evaluated the AstraZeneca Pharmaceuticals LP (AstraZeneca) establishment located at 1800 Concord Pike, Wilmington Delaware." D.E. 22-1. Although Plaintiffs were physically in Illinois throughout their employment, they were considered to be employees of AstraZeneca's Delaware establishment for purposes of that investigation. FAC ¶ 16. Moreover, Plaintiffs allege that all employees, regardless of territory, position, or department, were paid according to the same pay structure maintained by Defendant. *Id.* ¶ 22; *see Toomey*, 2013 WL 5448047, at *6 (noting that a central administrative unit setting wages is one factor to consider in finding an exception to the single physical location establishment rule).

Plaintiffs similarly meet their pleading burden under the IEPA. Plaintiffs alleged that at all relevant times, Defendant employed men in the same or similar positions as them *within the same counties in which they worked*. FAC ¶ 20. Plaintiff Ledinsky alleged she was specifically told by her regional manager, i.e., someone who could have access to information regarding the pay rates of men in the same or similar positions as her within the same county, that women were paid less than men because of their sex. *Id.* ¶ 24. According to the OFCCP's investigation, which included employees living in Illinois, women were actually paid less than men in "similar positions" based on their sex. D.E. 22-1. If Defendant's pay structure does differentiate employees' pay-rates based on his or her geographical location, the OFCCP likely would have accounted for that difference. And finally, even if the IEPA requires a county-by-county analysis, that would be done during the discovery phase of this case. Again, at this stage the Plaintiffs need not show facts supporting every element of their claims – they simply need to put the Defendant on notice. And Defendant is clearly on notice that Plaintiffs allege they were paid less than men in their positions across the board, which plausibly includes nationally, state by state, county by county, and even facility by

11

facility – all matters best left for discovery. Therefore, Plaintiffs' claims cannot be defeated at this stage by the physical limitations set in the relevant statutes.

### B. Plaintiffs Have Adequately Alleged Collective and Class Claims.

Defendant adds that, even if this Court does not dismiss Plaintiffs' First Amended Complaint in its entirety, it should strike their class allegations. Doing so without the benefit of class discovery or even a class certification motion would be improper and premature. Dismissing class allegations before a plaintiff files a motion for class certification requires a finding that additional discovery could not be useful in deciding class certification. *Kasalo v. Harris & Harris, Ltd.*, 656 F. 3d 557, 563 (7th Cir. 2011). If additional discovery is required to determine whether class certification is appropriate, then a motion to strike class allegations is premature. *Stauffer v. Innovative Heights Fairview Heights*, 2021 WL 2256031, at * 2 (S.D. Ill. 2021) ("the analysis focuses on whether the plaintiff's class allegations are facially defective or inherently deficient . . . . If, on the other hand, the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature") (internal quotation marks omitted); *Gilbert v. Lands End Inc.*, 2020 WL 1912003, at *5 (W.D. Wis. 2019) (refusing to strike class allegations where the plaintiffs needed discovery to identify whether, despite differences between class members, there may be a predominant common question susceptible to a common answer).

Here, it is at least plausible that Plaintiffs will be able to satisfy the class requirements, rendering Defendant's motion premature. Plaintiffs allege that they performed substantially similar duties in all of the various positions they held while working for Defendant. FAC ¶¶ 16–18. Plaintiffs further allege that all sales positions are subject to the same pay structure. *Id.* ¶ 22. The OFCCP's investigation concluded that while occupying one of those sales positions at

12

Defendant, Plaintiffs were underpaid based on their sex. D.E. 22-1. Plaintiffs assert that the discriminatory pay structure did not change following this investigation. FAC ¶ 37.

Defendant's citations to *Arango v. Work & Well, Inc.*, 2012 WL 3023338 (N.D. Ill. July 24, 2012) and *Beyer v. Michels Corp.*, 2022 WL 901524 (E.D. Wis. Mar. 28, 2022) are unpersuasive. In *Arango*, the court noted that the plaintiff's complaint alleged only that it was "believed" that the putative class of employees with claims of tortious interference numbered in the hundreds. 2012 WL 3023338 at *2. In contrast, Plaintiffs already have the OFCCP's investigation results, which found 295 women were paid less in the evaluated position based on their sex. D.E. 22-1. 295 putative plaintiffs is well above the threshold for numerosity. Plaintiffs continued to work at Defendant after the investigation. During that time, they did not observe and were not otherwise made aware of any changes to Defendant's discriminatory pay structure or variability in the number of similarly situated workers at the Defendant. FAC ¶ 37. Further, while Plaintiffs currently only have access to the redacted version of the Conciliation Agreement, which does not note where the underpaid women were located, all three Plaintiffs only worked for Defendant within the State of Illinois. Thus, it is extremely likely that there is a substantial group of affected employees in the state as well as throughout the country, meeting numerosity.

In *Beyer*, the court struck the plaintiff's class claims after noting that she failed to allege that there was an applicable uniform policy that established other employees were also not compensated properly. 2022 WL 901524, at *9. Overall, the court concluded that the complaint contained very few allegations regarding class or collective claims. *Id.* Here, Plaintiffs identified the level system pay structure to which all sales employees were subject, a government investigation that found that 295 women were paid less than men in similar positions based on sex, the similar experiences of the four Plaintiff-employees, and the admissions of a regional manager.

FAC ¶¶ 22, 24, 34, 36. Therefore, this matter is thus distinguishable from Defendant's proffered precedent.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety. Should the Court grant any portion of Defendant's Motion, Plaintiffs respectfully request that the Court grant them leave to amend their Complaint to cure any deficiencies pursuant to the liberal amendment standards applied under Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").

Dated: June 3, 2022

Alejandro Caffarelli, #06239078
Nicole Young, #06333586
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880
*acaffarelli@caffarelli.com*
*nyoung@caffarelli.com*

Respectfully submitted,
NATALIE JIREK, NANCY LEDINSKY, and JUDY TESKE, individually and on behalf of all others similarly situated

By: /s/ Alejandro Caffarelli
    Attorney for the Plaintiffs

14

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the attached, **Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss**, was served upon all parties of record by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on June 3, 2022.

By: /s/ Alejandro Caffarelli
One of Plaintiffs' Attorneys