# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATALIE JIREK, et al., | |
| Plaintiffs, | Case No. 21 C 6929 |
| v. | Judge Sara L. Ellis |
| | Magistrate Judge Sunil Harjani |
| ASTRAZENECA PHARMACEUTICALS LP, | |
| Defendant. | |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION
### TO DISMISS AND STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT

Dated: June 24, 2022

Jonathan D. Lotsoff
James P. Looby
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, 28th Floor
Chicago, IL 60606
+1.312.324.1000 (phone)
+1.312.324.1001 (fax)
jonathan.lotsoff@morganlewis.com
james.looby@morganlewis.com

Andrea N. Threet (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
+1.202.739.3000 (phone)
+1.202.739.3001 (fax)
andrea.threet@morganlewis.com

ATTORNEYS FOR DEFENDANT ASTRAZENECA
PHARMACEUTICALS LP

## INTRODUCTION

Plaintiffs' Opposition to Defendant's Motion to Dismiss and Strike ("Opp.", Dkt. 39) turns the pleading standard on its head to try to contort their scantily pleaded claims into plausible ones. AstraZeneca does not seek to heighten the pleading standard. It seeks to hold Plaintiffs to their legal obligation to allege facts plausibly establishing each claim they assert, if they wish to pursue them, including their expansive and burdensome class and collective claims. Aside from knowing that Plaintiffs allege unequal pay based on gender across "all sales positions" company-wide, AstraZeneca is left in the dark as how these three Plaintiffs—who admit they "only worked for Defendant within the State of Illinois" (Opp. at 13)—purport to assert such claims as to themselves, much less on behalf of a nationwide collective or Illinois class generally.

Plaintiffs tacitly acknowledge that their First Amended Complaint ("FAC," Dkt. 22) lacks factual support, first and foremost by failing even to set forth in their Opposition the "Factual Allegations" that purportedly render their claims plausible. Instead, they blithely refer the Court back to their entire FAC (Opp. at 1-2) with an assurance that they plan to piece their claims together during discovery. But Plaintiffs cannot sidestep their obligation to provide the grounds of their plausible entitlement to relief. Nor can they use discovery to try to fish out grounds for their claims, as U.S. Supreme Court and Seventh Circuit precedent make clear.

Plaintiffs also rely heavily on a "straw man" that is not factually supported in their FAC. They repeatedly allege a nebulous discriminatory company-wide "pay structure," but provide no *facts* plausibly indicating that any such "pay structure" exists, much less one that is discriminatory across the broad collective and class they seek to represent. To the contrary, the Conciliation Agreement makes plain that the OFCCP conducted "a compliance review of AstraZeneca's Wilmington, Delaware facility" as a whole, yet found alleged issues as to two and only two roles in different practice areas and levels, not across all positions and levels. Dkt. 22-1, Ex. C at 21.

1

Plaintiffs are not entitled to relief under the EPA or IEPA simply because a government agency conducted an affirmative action plan audit under different standards inapposite to those laws and found inconsistencies among just two distinct job codes during a one-year period (2015-2016) outside the limitations period. Plaintiffs cannot bridge the gap from the OFCCP findings to violations under the EPA or IEPA without sufficient additional factual support, which they have failed to provide in two attempts. The FAC does not answer key pleading questions as to the basis for their claims, including for example:

- What discriminatory pay events occurred during the maximum potential EPA limitations period, March 16, 2019 to present, when the FAC alleges none?
- What are the factual grounds for Plaintiffs' nationwide class and collective claims when the FAC only discusses the three Plaintiffs' highly individualized experiences, all of whom worked only in Illinois and some of whom like Teske provide virtually no facts as to her own situation at all?
- How are employees in "all sales positions" or "all Level 4 Specialty Care Sales Representatives" across AstraZeneca's workforce performing "equal work" when the FAC and the Conciliation Agreement indicate that they work in a variety of different therapeutic areas, business units and levels, such as Cardiology, Hospital, Respiratory, Health System, and Oncology?
- How can Plaintiffs' "bland abstractions" as to what "sales" employees do—selling, marketing, helping customers—sufficiently plead actual job content as the law requires, when that description is so generic as to sweep in all manner of other totally unrelated "sales positions" such as a retail store clerk, an ad agency sales executive, or a securities broker?
- Where does *any* male comparator work—named or unnamed—and are those locations in the same EPA establishment or Illinois county as even a single Plaintiff or class/collective member?

Each of these questions demonstrates the FAC's fundamental pleading deficiencies. Indeed, there are three independent reasons to dismiss the FAC and/or strike its class and collective claims. *First*, their federal EPA claims (Counts I and II) are facially time-barred. *Second*, the FAC fails to plausibly allege equal or substantially similar work under either the EPA or IEPA. *Finally*, Plaintiffs neglect to identify any male "comparator," much less across the putative class or

collective, employed in any Illinois county, or in the same geographic EPA "establishment" as any woman. Plaintiffs' Opposition offers no facts or law to overcome any of such dismissal grounds. The Court should thus grant AstraZeneca's motion (Dkt. 28).

## ARGUMENT

### I. Plaintiffs Have Diluted and Failed to Meet the Applicable Pleading Standard.

Plaintiffs cavalierly assert that as long as AstraZeneca has some vague sense of their intended claims, they have met "what is required of them" by "simply putting Defendant on notice of their claims." Opp. at 4. But Plaintiffs cannot lower the pleading bar so they can clear it. The well-established meaning of "notice" in the pleading context requires Plaintiffs to state factual allegations that make their claims facially plausible. Plaintiffs' failure to do so here, despite two attempts, renders their claims implausible. A boilerplate recitation of a claim's elements does not suffice as "notice" or otherwise meet the pleading threshold. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has rejected Plaintiffs' theory that requiring plausible grounds for claims somehow holds a plaintiff to a "probability requirement." *See Twombly*, 550 U.S. at 556. AstraZeneca has not argued Plaintiffs must "prove their case" at this stage. Opp. at 3. They have not pleaded a viable "case" to start with.

Plaintiffs' labeling of this case as "simple claims of discrimination" does not make it so (Opp. at 4), and a plain reading of their omnibus FAC demonstrates the contrary. With claims as far-reaching and complicated as Plaintiffs' (i.e., four nationwide class and collective claims involving, e.g., multiple job levels, positions, and therapeutic areas), it is essential that the claims are factually supported. Plaintiffs cannot breeze through the threshold pleading requirements through such *ipse dixit*. *See* Opp. at 4.

Nor can Plaintiffs bank on their hope that discovery will reveal information to shore up their threadbare FAC. The Supreme Court held that discovery does not function to prop up insufficient

3

complaints: "Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." *Iqbal*, 556 U.S. at 686; *id.* at 684-85 ("a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process"); *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]").

To the contrary, the breadth and complexity of Plaintiffs' claims demand *greater* factual bases to render them plausible and guard against extensive discovery burdens. The Seventh Circuit made clear that courts should require "as much factual detail and argument as may be required to show that a plaintiff has a plausible claim," particularly where, like here, "discovery is likely to be more than usually costly." *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803-04 (7th Cir. 2008); *see Twombly*, 550 U.S. at 558; *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) ("The required level of factual specificity rises with the complexity of the claim.").

## II. Plaintiffs Have Not Plausibly Alleged an EPA Violation in the Limitations Period.

Of the limited factual allegations in the FAC, none occurs within the EPA's limitations period, rendering them time barred. Plaintiffs' Opposition concedes as much, including with respect to the events in the Conciliation Agreement. Opp. at 4-5. It is undisputed that the OFCCP audit period and findings were limited to the period between October 1, 2015 and September 30, 2016, which predates the EPA (and the IEPA) limitations period by several years.[1] *See* Dkt. 22-1, Ex. C at 8. Plaintiffs explain that their untimely allegations were "mere evidence" of purportedly discriminatory pay practices, not the basis of their actual claims. Opp. at 4. This position is not only unsupported, but also amplifies the ambiguity of Plaintiffs' claims. Plaintiffs cite Eighth

---

[1] As AstraZeneca previously explained in its Memorandum of Law in support of its Initial Motion to Dismiss and Strike ("Initial Mot.," Dkt. 29), even assuming that Plaintiffs pleaded a "willful" violation (*see* FAC ¶¶ 39-40), any claims accruing based on events prior to March 16, 2019 would be time-barred because they filed their EPA claims and written consents on March 16, 2022. Initial Mot. at 10.

Circuit authority, *Price v. Northern States Power Company*, 664 F.3d 1186 (8th Cir. 2011), for the notion that the untimely events alleged in their FAC can sustain their claims. However, the amended complaint in that case alleged specific acts of unequal pay squarely within the limitations period. *See Price*, D. Minn. Case No. 09-cv-01921-DWF-LIB, Dkt. 6. In affirming the grant of the defendant's motion for summary judgment, the Eighth Circuit noted that evidence beyond the limitations period may be considered in deciding the motion, *in addition* to the timely evidence. Plaintiffs plead no such timely facts here.

Instead, Plaintiffs pin their timeliness argument on their allegation "[u]pon information and belief" that "Defendant did not alter its pay practices following the initiation of the DOL's OFCCP investigation." FAC ¶ 37. But this conclusory and speculative assertion can neither render their EPA claims timely nor meet their pleading burden as to any of their claims. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (court need not accept as true "statements of law or unsupported conclusory factual allegations"); *Arango v. Work & Well, Inc.*, 2012 WL 3023338, at *2 (N.D. Ill. July 24, 2012) (striking class claim where there was "no factual basis to state a plausible claim" based on plaintiff's belief that a class had been harmed and a boilerplate recitation that the defendant "intentionally, wrongfully, and/or unjustifiably" committed the elements of tortious interference.); *PFT of Am., Inc. v. Tradewell, Inc.*, 1999 WL 179358, at *1-2 (S.D.N.Y. Mar. 31, 1999) (striking class allegations where plaintiff "cite[d] no facts…[showing] that there is any basis other than speculation as to whether there are other members of the class").

As a threshold matter, the Conciliation Agreement does not plausibly establish an EPA (or IEPA) violation as to *any* time period, whether before or during the limitations period. Plaintiffs conveniently ignore that the OFCCP's affirmative action plan compliance review for purposes of Executive Order 11246 did not involve the EPA or IEPA, the legal standard underlying either

5

statute, or an assessment of AstraZeneca's compliance with any such law. *See* Dkt. 22-2, Ex. C at 1 (preliminary statement). Plaintiffs' repeated reliance on the term "similar positions" in the Conciliation Agreement also is misplaced. "Similar" work and "similar" positions are not the relevant legal standards. *See EEOC v. Port Authority of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (discussing that congressional intent of the EPA concerned "equal pay for—*emphatically*—equal work" and noting Congress' rejection of statutory language encompassing "comparable work" to instead mandate "equal work") (emphasis in original).[2] Beyond that, the Conciliation Agreement contains a non-admissions clause, and acknowledges there was no merits adjudication as part of the audit process. Dkt. 22-1, Ex. C at 3, ¶ 12.

Even if Plaintiffs could tease an untimely EPA violation from the Conciliation Agreement (which they cannot), the FAC offers no plausible factual basis (even drawing reasonable inferences in their favor) for their speculative and conclusory allegation "upon information and belief" (FAC ¶ 37) that any allegedly discriminatory "pay practices" continued beyond September 30, 2016, much less for six years to the present. As previously explained, the Conciliation Agreement involved a one-year audit period from 2015 to 2016. Nothing in the Conciliation Agreement indicates any continuation of any such issues thereafter. And one would assume that if the OFCCP *had* found any such issues, it would have addressed them in the Conciliation Agreement.

Furthermore, the FAC pleads that at least two of the named Plaintiffs (Jirek and Ledinsky) moved in 2017—prior to the EPA limitations period—*out of the* various distinct "Specialty" roles that they claim were addressed in the Conciliation Agreement, and into different "*oncology* sales representative position[s]." FAC ¶¶ 25, 27, 35; *see* Dkt. 22-1, Ex. C. Plaintiffs' FAC and the Conciliation Agreement contain no facts plausibly demonstrating that the OFCCP's audit or the

---

[2] Plaintiffs note "[t]he same standards are used to analyze claims under the EPA and the IEPA." Opp. at 3.

resulting Conciliation Agreement encompassed any such Oncology positions. Nor does the FAC contain a single factual allegation as to any position held by the third Plaintiff (Teske) at any point after 2016, stating only that "[f]rom October 1, 2015 and to September 30, 2016 … Plaintiff Teske *was* a Level 4 Executive Health System Specialist." FAC ¶ 35 (emphasis added). Plaintiffs thus offer no facts, only pure speculation, that any of them—or any other putative class or collective member—suffered any legal violation within the EPA limitations period.

Plaintiffs attempt to gloss over these deficiencies by characterizing AstraZeneca as having a nebulous, yet uniform and unchanging, "pay structure" (*see, e.g.*, Opp. at 4-5), such that pleading a purported violation as to *any* specific role at *any* given time automatically pleads a plausible claim as to *all* sales roles across the entire Company at *all* times. The problem again is that neither the FAC nor the Conciliation Agreement contain facts to plausibly support such a sweeping assertion. As stated, the Conciliation Agreement makes plain that the OFCCP conducted "a compliance review of AstraZeneca's Wilmington, Delaware facility" as a whole, yet found issues as to two and only two distinct roles. Dkt. 22-1, Ex. C at 21. That belies Plaintiffs' assertion that "[t]he OFCCP never states that it conducted an evaluation of all of Defendant's job classifications [as to that facility] and found that only the listed two contained illegal disparities." Opp. at 6 n.1.

Plaintiffs' rank speculation that it is "extremely likely that there is a substantial group of affected employees in the state as well as throughout the country" does not allow them to meet their pleading burden. Opp. at 13; *see supra* at Arg. § I (citing cases deeming speculation insufficient to meet pleading burden). Nothing in the FAC or the Conciliation Agreement indicates that AstraZeneca had a uniform "pay structure" nationwide across all positions, or that any "pay structure" supposedly used in 2015-2016 with the two roles subject to the Conciliation Agreement continued thereafter as to those or any other roles. To the contrary, the FAC expressly or tacitly

7

concedes, for example, that AstraZeneca has different levels of pharmaceutical sales representative roles in different therapeutic areas with different pay ranges, and that changes between or even *within* levels and roles can constitute promotions. *See, e.g.*, FAC ¶¶ 22-23, 25-31, 35 (referencing various Level 3 and Level 4 positions; a "level system"; specialized areas of Cardiology Hospital, Respiratory, Health System, and Oncology sales; and that a move from Level 4 Cardiology to Level 4 Oncology role was a promotion). It is well-established that "if a plaintiff pleads facts which show he has no claim, then he has pled himself out of court." *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (citation omitted).

Ledinsky's or Jirek's scant individual allegations—Teske makes none as to herself—also do not plausibly allege any "continuing" violations into the EPA limitations period. All of those allegations are too dated to be actionable and solely focus on their own respective individual circumstances. At base, Plaintiffs allege that they each held certain distinct roles and that "all three Plaintiffs only worked for Defendant within the State of Illinois." *See* Opp. at 13. These allegations fail to state a claim as to themselves or anyone else, as discussed below and in AstraZeneca's Initial Motion. Plaintiffs fail to plead equal or substantially similar work, or that a higher paid comparator did equal work to them in the same relevant geographic area (even as to the unidentified male from an unspecified territory, who Ledinsky "met" at an unspecified location).

Similarly, Ledinsky's "regional manager's" alleged statements are not a "direct admission" of anything, and cannot plausibly establish EPA (or IEPA) violations in the limitations period.[3] It

---

[3] Notably, Plaintiffs grossly mischaracterizes their own FAC allegations. They claim that this "regional manager's" comments confirmed "based on his personal knowledge – [that] Defendant paid its female employees less than its male employees." Opp. at 6 (citing FAC ¶¶ 24, 36). But these FAC allegations say no such thing. Paragraph 24 alleges that this regional manager said only that *Ledinsky* purportedly was paid less than males in the same or similar sales positions, because of her sex, and Paragraph 36 simply alleges that he said he was not surprised by the OFCCP's findings. Neither supposed statement supports Plaintiffs' sweeping and misleading characterization in their Opposition, or reflects any factual basis to assume the manager had "personal knowledge" of any such matters. Such allegations, including that Ledinsky

is axiomatic that mere differences in pay between men and women, even in "similar positions," do not state an EPA (or (IEPA) claim. Plaintiffs must allege far more than a pay differential. The manager's unspecified "region," and the lack of any factual detail as to (i) the person to whom he supposedly was comparing Ledinsky; (ii) what work they did; and (iii) where they worked, render Ledinsky's vague allegations probative of nothing. In sum, there is simply no plausible factual basis for Plaintiffs' attempt to extrapolate from their individual experiences—none of which even state an individual claim—to their sweeping company-wide allegation that:

> Upon information and belief, Defendant did not alter its pay practices following the initiation of the DOL's OFCCP investigation, and through this day has continued paying female sales employees across all departments and across all levels throughout the country less than their similarly situated male sales employee counterparts.

FAC ¶ 37. Their EPA claims thus are entirely time-barred.

**III.     Plaintiffs Fail to Sufficiently Plead "Equal Work" or Any Higher Paid Comparator.**

Plaintiffs acknowledge that they must allege (among other things) that they performed work involving equal skill, effort, and responsibility to "some sort of comparator to support her claim." Their Opposition fails to show that they have met their pleading burden as to either point.

**A.     Plaintiffs Fail to Plead "Equal (or Substantially Similar) Work."**

AstraZeneca previously explained how Plaintiffs' "bland abstractions"—that "all sales positions" do the same three tasks of marketing, selling, and servicing customers—fall short of factually pleading equal (or substantially similar) work as a matter of law. Initial Mot. at 10-13. Plaintiffs have no meaningful response. They state in conclusory fashion that those duties "were uniform across all the positions that Plaintiff's held," and therefore, that "Plaintiffs have plausibly pled sufficient facts to satisfy the second and third elements of their claims." Opp. at 7. Under

---

supposedly was paid less "because of sex," also fall short pleading *facts*, as opposed to speculation and legal conclusions, sufficient to render a claim plausible. *See supra* at Arg. § I (citing cases).

Plaintiffs' highly generic standard, all "sales" employees selling *any* product in *any* industry to *any* type of customer would be doing the same type of work. That is not the legal standard under the EPA or the IEPA, however. *See, e.g.*, *Port Authority*, 768 F.3d at 254-55. Plaintiffs plead nothing regarding, for example, the type of customer each Plaintiff and collective and class member dealt with (e.g., a solo provider versus a large academic medical center), or specialized expertise and training necessary to learn about different diseases, conditions, and related therapies. Other factual deficiencies in the FAC abound. To paraphrase the Second Circuit: "[A]ccepting such a sweeping generalization as adequate to state a claim under the EPA might permit lawsuits against any [pharmaceutical company]—or, conceivably, any type of employer—that does not employ a lockstep pay model." *Id.* at 256-57.

Plaintiffs' Opposition offers no path to surmount these deficiencies. Neither the Conciliation Agreement, including its generic reference to "similar positions," nor the alleged comments by Ledinsky's "regional manner" plausibly show that "all sales positions" do the same or substantially similar work *across* levels or even *within* any given level, irrespective of business unit or therapeutic area. "Similar positions"—itself vague and undefined—is not the EPA or IEPA standard, and Plaintiffs' repeated sidestepping of the actual standard is telling. Moreover, Plaintiffs admit they held different roles in different therapeutic areas—including Level 4 Executive Cardiovascular Hospital Representative (Ledinsky); Level 4 Executive Respiratory Specialty Care Representative (Jirek); Level 4 Executive Health System Specialist (Teske); and Level 4 Oncology Sales Representative (Ledinsky and Jirek). FAC ¶¶ 25-27, 35—and that even moving *within* Level 4 roles can constitute a promotion. FAC ¶¶ 27-28.

Plaintiffs note that in *Port Authority*, the EEOC had the benefit of an investigation prior to filing its complaint (Opp. at 8), but this is not a meaningful distinction. Plaintiffs cannot cure

pleading deficiencies through promises of future discovery, *supra* at Arg. § I, and the extent of information available to a plaintiff does not create a sliding scale for that plaintiff's pleading burden under *Twombly* and *Iqbal*. At base, *Port Authority* turned on whether the allegations within the four corners of the complaint were sufficient to support the proffered claims. The same analysis applies here. Notably, the court in *Port Authority* dismissed the EEOC's complaint even though it offered significantly more facts than Plaintiffs' FAC. For example, the EEOC alleged similar educational degree requirements to show that attorneys had the same "skill," as well as facts specific to the "effort" and "working conditions" prongs of the "equal work" inquiry. *See Port Authority*, 768 F.3d at 250. The FAC contains no such factual support and must be dismissed.

      **B.    Plaintiffs Identify No Male Comparator in the Same Establishment or County.**

Plaintiffs' Opposition also cannot cure their failure to "point to some sort of comparator to support her claim," as they admit they must. Opp. at 5. They effectively concede that they must plead facts plausibly demonstrating a higher paid male comparator in the "same establishment" or "same county," respectively, under the EPA and IEPA (*id.* at 9-10)—further threshold requirements that they neglect to meet. AstraZeneca is not demanding that Plaintiffs provide "names or salaries of specific colleagues." Opp. at 5. Rather, the FAC does not identify a single male comparator—named or otherwise—who worked in the same EPA establishment, or IEPA Illinois county, as any of the Plaintiffs or proposed class and collective members. As previously noted (Initial Mot. at 13-14, 15-16) and detailed above, Plaintiffs' conclusory, boilerplate assertions that "AstraZeneca employed male sales representatives in the same or similar positions as Plaintiffs" throughout Illinois and the country (FAC ¶¶ 20-21) do not suffice. Nor do Ledinsky's vague allegations regarding an unspecified male from an unspecified work territory that she "met" at an unidentified location, or her "regional manager's" alleged vague statements. None provides

a shred of factual information plausibly meeting the EPA establishment or IEPA county requirement as to even a single Plaintiff, much less any or all class and collective members.

Plaintiffs are unable to distinguish *Karlo* and *Boyd*. Their Opposition claims that the FAC "offer[s] that Defendant employed men in similar sales positions to them." Opp. at 9 (citing FAC ¶¶ 18–21). But again, "similar" positions is not the EPA or IEPA test, and *Port Authority* and other precedent makes clear that Plaintiffs' "bland abstractions" in the FAC are as "description-less" (Opp. at 8) as the deficient allegations in *Karlo*. *See Karlo v. St. Augustine Coll.*, 2021 WL 2156438, at *4 (N.D. Ill. May 27, 2021). Neither gives any sense as to "exactly what positions to which Plaintiffs compare themselves" (Opp. at 8), or the purported male comparators that held such positions in the same EPA establishment or Illinois county. Nor do Plaintiffs distinguish *Boyd*, which did not turn on whether the plaintiff and her male counterparts had the same title, but rather on the plaintiff's "alleg[ing] no facts to support an inference that the three men at issue completed equal work that required similar skill, effort, or responsibility"—equally true in this case. *See Boyd v. City of Chicago*, 2021 WL 2012234, at *1 (N.D. Ill. May 20, 2021).

Plaintiffs' effort to conflate AstraZeneca's entire nationwide sales organization into a single nationwide "establishment" for purposes of the EPA similarly has no support in law or Plaintiffs' allegations. The Conciliation Agreement, involving a federal contractor's obligations under Executive Order 11246, did not involve the EPA or its definition of "establishment." Plaintiffs' speculative claim that the OFCCP "would have accounted for" geographic difference had it mattered thus is inapposite. Opp. at 11. Under the EPA, only "unusual circumstances" not present here allow multiple locations to serve as a single "establishment," e.g.:

> [A] central administrative unit may hire all employees, set wages, *and* assign the location of employment; employees may frequently interchange work locations; *and* daily duties may be virtually identical and performed under similar working conditions.

12

29 C.F.R. § 1620.9(b) (emphasis added). Plaintiffs acknowledge that "a central administrative unit setting wages is *one factor* to consider in finding an exception to the single physical location establishment rule." Opp. at 11 (emphasis added). But they allege no facts meeting the other multi-site establishment criteria, e.g., that an AstraZeneca "central administrative unit … hire[d] all employees, … and assign[ed] the location of employment" and that all "employees may frequently interchange work locations" across the country or state. 29 C.F.R. § 1620.9(b). Instead, they ask the Court to blindly assume that they fall into the "unusual circumstances" exception. Plaintiffs' claims are cabined within Illinois, not Delaware or anywhere else outside of Illinois. They cannot presume that AstraZeneca's Delaware headquarters serves as a single "establishment" for all employees.

Plaintiffs' pleading deficiencies are equally glaring as to the IEPA's county limitation. The FAC makes no reference to any Illinois county in which even a single male employee worked. Their claim that "analysis … would be done during the discovery phase of this case" cannot meet their pleading burden. Opp. at 11. Plaintiffs again ask this Court to put the discovery cart before the pleading horse, but federal law mandates otherwise, and their FAC must be dismissed.

**IV.     Plaintiffs Have Not Plausibly Pleaded Class and Collective Claims.**

Finally, Plaintiffs' Opposition does not address, and indeed distorts, the grounds for AstraZeneca's motion to strike their class and collective claims. Plaintiffs argue that "it is at least plausible that Plaintiffs will be able to satisfy class requirements." Opp. at 12. But (in addition to being wrong) that is not the basis of AstraZeneca's motion. AstraZeneca is not (at this time) challenging whether Plaintiffs have met Rule 23 or EPA class or collective certification criteria. Initial Mot. at 18 n.9. This Court need not even reach those questions. Rather, AstraZeneca asserts that the FAC lacks any facts plausibly alleging class- or collective-wide claim, and thus, Plaintiffs' FAC does not even get out of the gate, much less to the class or collective certification stage.

13

Plaintiffs' citations to *Stauffer* (for "whether a class should be certified"), *Gilbert* (for whether "there may be a predominant question susceptible to a common answer"), and *Kasalo* (for "whether class certification is appropriate"), thus are inapposite. Opp. at 12. In *Stauffer v. Innovative Heights Fairview Heights*, the court distinguished procedural challenges to class claims (like AstraZeneca's) from substantive, fact-specific challenges to Rule 23 certification criteria yet held that in either situation, "the analysis focuses on whether the plaintiff's class allegations are facially defective or inherently deficient"—precisely AstraZeneca's argument. 2021 WL 2256031, at *2 (S.D. Ill. 2021). The analysis in *Gilbert v. Lands End Inc.* applied *only* to a Rule 23 certification challenge to class claims, which is not what AstraZeneca asserts. 2020 WL 1912003 (W.D. Wis. 2019). And *Kasalo v. Harris & Harris, Ltd.* did not touch on the sufficiency of the class claims because plaintiff's counsel "effectively conceded that the class claims in the original complaint cannot proceed." 656 F.3d 557, 563 (7th Cir. 2011). None undermines AstraZeneca's argument.

As previously discussed and detailed above, none of Plaintiffs' allegations—whether based on their own idiosyncratic circumstances as Illinois employees, the Conciliation Agreement, or otherwise—plausibly show that AstraZeneca engaged in pay discrimination across the nation or across Illinois as to "all sales positions" or "all Level 4 Specialty Sales Care Representatives." It is hardly "premature," as Plaintiffs suggest, for this Court to address whether Plaintiffs have stated plausible class and collective claims, as AstraZeneca's cited precedent makes clear, and when Plaintiffs already had the opportunity to amend their initial complaint. *See, e.g.*, *Arango*, 2012 WL 3023338, at *2 (striking class claim based on failure to plead facts plausibly asserting a Rule 23 claim, irrespective of satisfaction of individual Rule 23 criteria); *Beyer v. Michels Corp.*, 2022 WL 901524, at *1, 8-9 (E.D. Wis. Mar. 28, 2022) (striking collective action claim).

The court in *Arango* reached this question at the pleading stage and dismissed class claims on the independent ground that they did not meet basic factual plausibility requirements. *Arango*, 2012 WL 3023338, at *2. Plaintiffs try to distinguish *Arango* because, there, the plaintiff's class claims were supported only by his "belief" that class treatment was appropriate. Opp. at 13. But Plaintiffs offer no more here. *See* FAC ¶ 37 ("*Upon information and belief*, Defendant . . . through this day has continued paying female sales employees across all departments and across all levels throughout the country less than their similarly situated male sales employee counterparts.") (emphasis added). Plaintiffs' description of *Beyer* as involving the lack of a sufficiently pleaded uniform policy and "very few allegations regarding class or collective claims" also cannot save their claims. Opp. at 13; *Beyer*, 2022 WL 901524, at *1, *8-9. Again, the same is true here.

In sum, Plaintiffs' class and collective claims are fundamentally flawed as pleaded in the FAC and therefore should be stricken from this matter.

## CONCLUSION

The Court should grant AstraZeneca's Motion in its entirety with prejudice or, alternatively, strike Plaintiffs' class and collective action claims from the FAC with prejudice, and grant AstraZeneca such other and further relief as the Court may deem just and appropriate.

Dated: June 24, 2022          Respectfully submitted,

By: */s/ Jonathan D. Lotsoff*

Andrea N. Threet (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
+1.202.739.3000 (phone)
+1.202.739.3001 (fax)
andrea.threet@morganlewis.com

Jonathan D. Lotsoff
James P. Looby
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, 28th Floor
Chicago, IL 60606
+1.312.324.1000 (phone)
+1.312.324.1001 (fax)
jonathan.lotsoff@morganlewis.com
james.looby@morganlewis.com

                A<small>TTORNEYS FOR</small> D<small>EFENDANT</small> A<small>STRA</small>Z<small>ENECA</small> P<small>HARMACEUTICALS</small> LP

## CERTIFICATE OF SERVICE

      I, Jonathan D. Lotsoff, an attorney, hereby certify that on June 24, 2022, I caused a copy of the foregoing **Reply in Support of Defendant's Motion to Dismiss and Strike Plaintiffs' First Amended Complaint** to be filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

                                                /s/     *Jonathan D. Lotsoff*
                                                           Jonathan D. Lotsoff