UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATALIE JIREK, NANCY LEDINSKY, and JUDY TESKE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 21 C 6929 |
| v. | ) ) | Judge Sara L. Ellis |
| ASTRAZENECA PHARMACEUTICALS LP, | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiffs Natalie Jirek, Nancy Ledinsky, and Judy Teske bring this collective action on behalf of themselves and similarly situated individuals against Defendant AstraZeneca Pharmaceuticals L.P. ("AstraZeneca"), alleging that AstraZeneca paid female sales employees less than their male counterparts for the same work in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and the Illinois Equal Pay Act ("IEPA"), 820 Ill. Comp. Stat. 112/1 *et seq.* For both their EPA and IEPA claims, Plaintiffs propose a class of "[a]ll females employed by AstraZeneca in sales position," or alternatively "[a]ll females employed by AstraZeneca in Level 4 Specialty Care Sales Representative positions." Doc. 22 ¶ 41. AstraZeneca now moves to dismiss Plaintiffs' first amended complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to strike the class and collective action allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D). Because Plaintiffs have not sufficiently alleged violations of the EPA or IEPA, the Court grants AstraZeneca's motion to dismiss.

**BACKGROUND**[1]

AstraZeneca is a pharmaceutical company that employs individuals in sales positions throughout the country. Plaintiffs, female AstraZeneca sales employees, worked in various positions in Illinois: Ledinsky was a Level 4 Cardiology Hospital Sales Representative until December 2017 when she received a promotion to Oncology Sales Representative; Jirek was a Level 4 Executive Respiratory Specialty Care Representative until May 2017 when she became an Oncology Sales Representative[2]; and Teske was a Level 4 Executive Health System Specialist. Although they had different positions, each Plaintiff's "main job responsibilities" were "to market and sell their assigned AstraZeneca products and service their respective client accounts." Doc. 22 ¶ 18. AstraZeneca promotes its sales employees through a "level system," which determines the applicable pay ranges irrespective of "territory, position, or department." *Id.* ¶ 22.

Eight months after Jirek became an Oncology Sales Representative, she learned that her position had been downgraded to Level 3, although her pay remained the same. Jirek informed her manager of the change. Her manager raised the issue with the human resources department and Jirek's position returned to Level 4. Similarly, when Ledinsky moved to Oncology Sales Representative in December 2017, she learned that her new position was Level 3, compared to her prior Level 4 position, and that it came with "a significantly lower wage." *Id.* ¶ 28. Ledinsky was told that the lower level and wage were due to her lack of oncology experience. In February 2018, Ledinsky attended a company meeting at which she met a male colleague who

---

[1] The Court takes the facts in the background section from Plaintiffs' Complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving AstraZeneca's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

[2] Although the Complaint describes Ledinsky's new role as a promotion, it is unclear whether Jirek's change in roles was also considered a promotion.

had also recently been promoted from a Level 4 sales position to Oncology Sales Representative. Although the male colleague also lacked oncology experience, AstraZeneca did not downgrade him to Level 3 and therefore paid him more than Ledinsky. Ledinsky raised the issue with her manager, who notified the human resources department. As a result, Ledinsky's position returned to Level 4; her pay remained the same, however.

Around 2020, the United States Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") conducted a compliance review of AstraZeneca, which found that between October 1, 2015 and September 30, 2016, AstraZeneca "paid female sales employees less per year than men in similar positions in violation of Executive Order 11246." *Id.* ¶ 32. On May 1, 2020, the OFCCP issued a notice of violation to AstraZeneca indicating that their pay practices violated Executive Order 11246. As a result, AstraZeneca entered into a Conciliation Agreement with the OFCCP, through which AstraZeneca agreed to take certain actions in exchange for OFCCP agreeing not to pursue enforcement for the alleged violations it identified. Doc. 22-1 at 8. The Conciliation Agreement states that OFCCP's review "found that, as of October 1, 2016, on average AstraZeneca paid 295 women [in Specialty Care Sales Representative Level 4 roles] $2,182.07 less than 228 men in similar positions" and that the pay differences "were based on sex." *Id.* at 10.

As part of the Conciliation Agreement, AstraZeneca notified employees identified by the review of its findings and offered them payment in exchange for releasing their claims against AstraZeneca. In November 2021, Plaintiffs each received notice of the findings by a letter titled "Release of Claims Under Executive Order 11246." If they signed the release, Plaintiffs would receive a "payment of at least $1,623.61," in exchange for releasing any claims against

AstraZeneca for violation of Executive Order 11246. Doc. 22-1 at 6. The Complaint does not indicate whether Plaintiffs signed the release.

In 2017, Ledinsky's regional manager, Derrik Winston, told her that "she was paid significantly less than male sales representatives in the same or similar sales positions, because of her sex." Doc. 22 ¶ 24. After Ledinsky received the OFCCP release, she contacted Mr. Winston who "indicated that he was not surprised by the OFCCP's findings." *Id.* ¶ 36. AstraZeneca "did not alter its pay practices following the initiation of the DOL's OFCCP investigation, and through this day has continued paying female sales employees across all departments and across all levels throughout the country less than their similarly situated male sales employee counterparts." *Id.* ¶ 37.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Plaintiffs bring claims under both the federal and Illinois versions of the EPA. Both statutes prohibit wage discrimination on the basis of sex. 29 U.S.C. § 206(d)(1); 820 Ill. Comp. Stat. 112/10; *see also Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000) ("The Equal Pay Act . . . forbids paying workers of one sex less than workers of the opposite sex for equal work that requires equal skill, effort, and responsibility, unless the pay differential is justified by factors other than sex, such as seniority, merit, experience, or education."). As the parties note, because the statutes are "nearly identical . . . [c]laims brought under the IEPA and EPA are analyzed the same way." *Karlo v. St. Augustine Coll.*, No. 20 C 5084, 2021 WL 2156438, at *2 (N.D. Ill. May 27, 2021).

To plead a violation of the EPA or IEPA, Plaintiffs must plausibly allege: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (citation omitted). Plaintiffs' Complaint must contain more than "legal conclusions or conclusory allegations," and the allegations must "plausibly suggest an entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). At the motion to dismiss stage, however, Plaintiffs need only provide "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015). At this stage, the relevant question is "*could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In assessing plausibility, the Court must rely on its judicial experience and common sense. *See, e.g.*, *McCauley*, 671 F.3d at 616 ("Making the plausibility determination is 'a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense.'" (citing *Iqbal*, 556 U.S. at 679)).

AstraZeneca argues that Plaintiffs have failed to establish their prima facie case because they do not identify: (1) any higher paid male comparators; (2) who performed equal work; (3) within the geographic limitations set out by the EPA (same geographic "establishment," *see* 29 U.S.C. § 206(d)(1)) and IEPA (same county, *see* 820 Ill. Comp. Stat. 112/10(a)). Plaintiffs agree that they must eventually identify a comparator but maintain that at the motion to dismiss stage, a plaintiff is not required to plead "unknown details" such as the name or salary of a comparator. *See* Doc. 39 at 5 (citing *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007)). Rather, Plaintiffs argue, they need only allege enough details to show their claims are plausible, which they contend they have done. Because Plaintiffs fail to sufficiently allege their job responsibilities, or those of their male comparators, the Court finds that Plaintiffs have not stated claims for violations of the EPA or IEPA.

The allegations common to all three Plaintiffs, and the only relevant allegations as to Jirek and Teske, are that: (1) AstraZeneca employed men in the same or similar positions as those held by Plaintiffs in Illinois and throughout the nation; (2) Plaintiffs had the same main job responsibilities throughout their employment, which included marketing AstraZeneca products, selling their products, and servicing client accounts; (3) according to the Conciliation Agreement, OFCCP's compliance review found that between October 1, 2015 and September 30, 2016, female sales employees in Specialty Care Sales Representative Level 4 roles were paid less based on their sex; and (4) AstraZeneca continues to pay female sales employees less than male sales employees. As to Ledinsky, the Complaint further alleges that: (1) in 2017, her regional manager told her that she was paid less than male colleagues in the same or similar

6

positions because of her sex; (2) in 2018, Ledinsky met a male colleague who was paid more than her despite holding the same position and having the same level of experience; and (3) despite notifying human resources, her pay disparity was never corrected.

In determining whether two jobs require "equal work," courts ask whether the jobs "have a common core of tasks, i.e., whether a significant portion of the two jobs is identical. Once a plaintiff establishes a common core of tasks, we ask whether any additional tasks make the jobs substantially different." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017) (citation omitted) (internal quotation marks omitted). To make this determination, "the court look[s] to the actual job duties performed by each employee, not to his or her description or title." *Id.* (alteration in original) (citation omitted); *see also Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 913 (7th Cir. 2002) ("The Plaintiff would have to show that the jobs compared are substantially equal, based upon actual job performance and content—not job titles, classifications or descriptions." (citation omitted) (internal quotation marks omitted)); *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 772 (7th Cir. 2007) (providing an example of "equal work" as "two sixth-grade music teachers, having the same credentials and experience, teaching classes of roughly the same size in roughly comparable public schools in the same school district").

In *E.E.O.C. v. Port Authority of New York and New Jersey*, 768 F.3d 247, 256–57 (2nd Cir. 2014), the Second Circuit found a high-level description of plaintiffs' job responsibilities to be insufficient to state a claim under the EPA. There, the complaint alleged that the Port Authority paid its female attorneys less than their male counterparts. The Second Circuit held that pleading "broad facts concerning the attorneys' jobs (such as that the attorneys all have 'the same professional degree, work 'under time pressures and deadlines,' and utilize both

'analytical' and 'legal' skills) that are generalizable to virtually all practicing attorneys" was insufficient to satisfy the "equal work" element. *Id.* at 249. In other words, the court rejected the argument that "all lawyers perform the same or similar function(s)" and thus "an attorney is an attorney is an attorney" because "accepting such a sweeping generalization as adequate to state a claim under the EPA might permit lawsuits against any law firm—or, conceivably, any type of employer—that does not employ a lockstep pay model." *Id.* at 257.

Similarly, here, Plaintiffs ask the Court to accept broad descriptions of Plaintiffs' roles as adequate to state a claim. *See, e.g.*, Doc. 39 at 8 ("[T]his information sufficiently demonstrates that all sales people at AstraZeneca perform substantially equal work."). But like *Port Authority*, alleging that "a salesperson is a salesperson is a salesperson," is not adequate to state a claim. While Plaintiffs' Complaint contains a high-level description of the responsibilities of sales employees generally, this description does not contain enough detail for the Court to ascertain Plaintiffs' "actual job duties." For instance, based on the Complaint, the Court does not know whether Plaintiffs (or their comparators) worked with large academic medical centers or solo providers, which would have different demands. As a further example, the Complaint does not state the complexity of the therapies Plaintiffs (or their comparators) sold, and the related training or education needed to sell such products. A Level 4 Cardiology Sales Representative, one of the positions formerly held by Ledinsky, for instance, could be tasked with selling a straightforward cholesterol medication, while another Level 4 Cardiology Sales Representative may be tasked with selling a medication used to treat a rare heart disease. These positions, although having the same title and similar job responsibilities (when viewed at a high-level), would not actually require equal work or "substantially similar skill, effort and responsibilities." *See Jaburek*, 813 F.3d at 632; *see also Sims-Fingers*, 493 F.3d at 771–72 ("The proper domain of

the Equal Pay Act consists of standardized jobs in which a man is paid significantly more than a woman (or anything more, if the jobs are truly identical) and there are no skill differences."). Plaintiffs argue that this case is different because in *Port Authority*, the EEOC had the benefit of a three-year investigation prior to bringing its complaint, whereas Plaintiffs have yet to receive discovery. That the EEOC had access to additional information but Plaintiffs do not, however, does nothing to cure the deficiencies of Plaintiffs' Complaint.

Plaintiffs also point to the OFCCP's finding that women in Level 4 Specialty Care Sales Representative positions were paid less than men in "similar positions," and that Ledinsky met a man "who was in her same job classification but whom she believed had a higher salary." Doc. 39 at 7, 9. But both of these allegations fail to save Plaintiffs' claims for the same reason: having a "similar position" or the "same job classification" does not, in itself, mean that all employees holding that position performed "equal work," which is what the statute requires. *See Port Authority*, 768 F.3d at 254 ("[T]he EPA concerned equal pay for—emphatically—*equal* work. To that end, Congress rejected statutory language encompassing 'comparable work' to instead mandate equal pay for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." (quoting 29 U.S.C. § 206(d)(1))). Because Plaintiffs fail to allege that they performed equal work to male comparators, the Court finds that Plaintiffs have failed to sufficiently state their EPA and IEPA claims.[3]

---

[3] AstraZeneca also moves to strike the class and collective allegations. Because the Court has granted AstraZeneca's motion to dismiss, the Court need not address this motion.

## CONCLUSION

For the foregoing reasons, the Court grants AstraZeneca's motion to dismiss [28]. The Court gives Plaintiffs until March 10, 2023, to file an amended complaint if they can do so in accordance with this opinion and Federal Rule of Civil Procedure 11.

Dated: January 25, 2023

                                                SARA L. ELLIS
                                                United States District Judge