**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATALIE JIREK, et al., | |
| Plaintiffs, | Case No. 21 C 6929 |
| v. | Judge Sara L. Ellis |
| | Magistrate Judge Sunil Harjani |
| ASTRAZENECA PHARMACEUTICALS LP, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**AND STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

Dated: April 14, 2023

Jonathan D. Lotsoff
James P. Looby
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, 28th Floor
Chicago, IL 60606
1.312.324.1000 (phone)
1.312.324.1001 (fax)
jonathan.lotsoff@morganlewis.com
james.looby@morganlewis.com

Andrea N. Threet (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
1.202.739.3000 (phone)
+1.202.739.3001 (fax)
andrea.threet@morganlewis.com

ATTORNEYS FOR DEFENDANT ASTRAZENECA
PHARMACEUTICALS LP

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 4

LEGAL STANDARDS ................................................................................................. 7

    I.     Motion to Dismiss............................................................................... 7

    II.    Motion to Strike Class and Collective Allegations.............................. 8

    III.   EPA and IEPA Elements and Pleading Requirements. ........................ 9

ARGUMENT ............................................................................................................... 10

    I.     Counts I and III (EPA National Collectives) Should Be Dismissed as
         Time-Barred. ..................................................................................... 10

    II.    All Counts Must Be Dismissed Because Plaintiffs Fail to Plead Equal
         Work, or Comparators Receiving Unequal Pay in the Same County or
         Establishment. .................................................................................. 10

         A.   Plaintiffs Fail to Sufficiently Plead Equal/Substantially Similar
             Work ............................................................................... 10

         B.   Plaintiffs Fail to Identify Any Comparator in the Same
             Establishment or County.................................................. 15

    III.   The Court Should Strike Plaintiffs' Class and Collective Claims. ....... 16

    IV.   Plaintiffs' Claims Should Be Dismissed or Stricken with Prejudice. ... 18

CONCLUSION............................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aboyade-Cole v. City of Chicago*,
2007 WL 9813324 (N.D. Ill. Dec. 12, 2007) ........................................................................10

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
683 F.3d 328 (7th Cir. 2012) ................................................................................................18

*Arango v. Work & Well, Inc.*,
2012 WL 3023338 (N.D. Ill. July 24, 2012) ....................................................8, 16, 17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................7, 8, 17

*Beyer v. Michels Corp.*,
2022 WL 901524 (E.D. Wis. Mar. 28, 2022) ....................................................9, 15, 16, 17

*Bohn v. Boiron, Inc.*,
2013 WL 3975126 (N.D. Ill. Aug. 1, 2013) ..........................................................................8

*Boyd v. City of Chicago*,
2021 WL 2012234 (N.D. Ill. May 20, 2021) ............................................................9, 15, 16

*Buonomo v. Optimum Outcomes, Inc.*,
301 F.R.D. 292 (N.D. Ill. 2014) ............................................................................................8

*EEOC v. Port Authority of New York and New Jersey*,
768 F.3d 247 (2d Cir. 2014) ................................................................................................12

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ................................................................................................18

*Jaburek v. Foxx*,
813 F.3d 626 (7th Cir. 2016) ................................................................................................9

*Jones v. BRG Sports, Inc.*,
2019 WL 3554374 (N.D. Ill. Aug. 1, 2019) ..........................................................................8

*Karlo v. St. Augustine Coll.*,
2021 WL 2156438 (N.D. Ill. May 27, 2021) ............................................................9, 10, 15, 16

*Kevari v. Scottrade, Inc.*,
   2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ...................................................9, 15

*Limestone Dev. Corp. v. Vill. of Lemont*,
   520 F.3d 797 (7th Cir. 2008) ...........................................................................16

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ...........................................................................16

*McCready v. eBay, Inc.*,
   453 F.3d 882 (7th Cir. 2006) ...........................................................................12

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ...........................................................................17

*PFT of Am., Inc. v. Tradewell, Inc.*,
   1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ...................................................17

*Toomey v. Car-X Assocs. Corp.*,
   2013 WL 5448047 (N.D. Ill. Sept. 30, 2013) .....................................................9

*Yeftich v. Navistar, Inc.*,
   722 F.3d 911 (7th Cir. 2013) .............................................................................8

**Statutes**

820 ILCS § 112/10 ....................................................................................................9

820 ILCS § 112/30(a) .............................................................................................10

29 U.S.C. § 206(d) ....................................................................................................9

29 U.S.C. § 206(d)(1) ...............................................................................................9

29 U.S.C. § 255(a) ...................................................................................................10

29 U.S.C. § 256 ........................................................................................................10

**Other Authorities**

1 McLaughlin on Class Actions § 3:4 (17th ed.) ...............................................16, 17

Fed. R. Civ. P. 12(b)(6) ...........................................................3, 7, 8, 9, 10, 15

Fed. R. Civ. P. 12(f) .................................................................................................8

Fed. R. Civ. P. 23 ..................................................................................................8, 18

Fed. R. Civ. P. 23(c)(1)(A) ......................................................................................8

Fed. R. Civ. P. 23(d)(1)(D) ...........................................................................................8

Office of the Illinois Secretary of State, Map of Illinois Counties,
    https://www.ilsos.gov/publications/illinois_bluebook/map.pdf ................................5

Place of Holding Court, U.S. District Court for the Northern District of Illinois,
    https://www.ilnd.uscourts.gov/Pages.aspx?page=PlaceinHolding ...........................5

## INTRODUCTION[1]

Plaintiffs' Second Amended Complaint ("SAC") fails to cure any of the defects identified by the Court in its ruling dismissing their First Amended Complaint ("FAC") (Dkt. 52), and in Defendant AstraZeneca Pharmaceuticals LP's ("AstraZeneca") motions to dismiss and strike the initial Complaint and the FAC (Dkts. 20, 29). Instead, the SAC rehashes the FAC with conclusory assertions, glosses over its factual deficiencies, and makes the same implausible sweeping claims that "*[a]ll* sales representatives *regardless* of their territory, position, or department, *share a common core of job duties*." SAC ¶ 36 (emphasis added). Plaintiffs also assert the identical exceptionally broad collectives and classes previously asserted in the FAC – "female employees in *all sales positions*" nationwide (Count I: EPA) and in Illinois (Count III: IEPA) (emphasis added); or "in the alternative," the equally sweeping *all* "female Level 4 Specialty Care Sales Representatives" nationwide (Count II: EPA) and in Illinois (Count IV: IEPA).

The Court's opinion dismissing the FAC emphasized that, "in determining whether two jobs require 'equal work [under the federal and Illinois Equal Pay Acts ("EPA" and "IEPA")],' courts ask whether the jobs 'have a common core of tasks, i.e., whether a significant portion of the two jobs is identical.'" Dkt. 52 at 7. The Court held that Plaintiffs' "high-level description of the responsibilities of sales employees generally" failed to plead plausible claims under these standards. *Id.* at 8. It even provided Plaintiffs with specific guidance should they wish to replead "in accordance with this opinion and Federal Rule of Civil Procedure [("Rule")] 11" (*id.* at 8, 10):

> For instance, based on the Complaint, the Court does not know whether Plaintiffs (or their comparators) worked with large academic medical centers or solo providers, which would have different demands. As a further example, the

---

[1] On April 11, 2023, AstraZeneca filed its Unopposed Motion for Additional Pages relating to this Motion. Dkts. 65-66. As that motion is still pending before the Court, AstraZeneca respectfully requests that the Court grant that motion instanter, as it considers Defendant's Motion to Dismiss and Strike Plaintiff's Second Amended Complaint. Additionally, per the Court's rules, the Parties conferred regarding this Motion prior to filing, and Plaintiffs oppose it.

Complaint does not state the complexity of the therapies Plaintiffs (or their comparators) sold, and the related training or education needed to sell such products. A Level 4 Cardiology Sales Representative, one of the positions formerly held by Ledinsky, for instance, could be tasked with selling a straightforward cholesterol medication, while another Level 4 Cardiology Sales Representative may be tasked with selling a medication used to treat a rare heart disease. These positions, although having the same title and similar job responsibilities (when viewed at a high-level), would not actually require equal work or "substantially similar skill, effort and responsibilities."

Incredibly, in their third attempt to stitch together plausible claims, Plaintiffs disregard this clear roadmap and again fall back on generalizations, including parroting the legal phrase "common core of job duties" in the SAC no less than *ten* times. They spill much ink alleging in wholly conclusory fashion that the "common core" of Plaintiffs' and *all* other "sales employees'" job duties "remained the same" or "did not change" over the decades, irrespective of job level, territory, therapeutic area, or "type or complexity of the drugs being sold." *See, e.g.*, SAC ¶ 37 ("The common core of job duties did not change if a sales representative worked in a specialization."); *id.* ¶¶ 18, 22, 26, 33, 36, 42-45. Beyond these conclusions, however, Plaintiffs still provide *no factual information regarding the work actually performed* by sales representatives. This is not surprising. Plaintiffs know full well that if they *did* address such factual matters, including the issues outlined in the Court's ruling, vast differences would abound.

Instead, Plaintiffs simply rebrand the same "bland abstractions" from the FAC, in which they claimed that all sales representatives "market and sell their assigned AstraZeneca products and service their respective client accounts." FAC ¶ 18. The Court deemed this an insufficient "salesperson is a salesperson is a salesperson" allegation. Dkt. 52 at 8. Yet using strikingly similar general language in the SAC, they now allege that *all* sales representatives' "main job responsibility" is to "educate medical professionals on their assigned treatments," and to "contact and meet with patient-facing medical professionals; network with other pharmaceutical representatives; and stay continuously educated on assigned products, the market, and

competitors." SAC ¶¶ 34-35. This is a distinction without a difference, and just a slightly tweaked but equally blanket allegation that "a product educator is a product educator is a product educator." In dismissing the FAC, the Court observed that "[i]n assessing plausibility, the Court must rely on its judicial experience and common sense." Dkt. 52 at 5. The same is true for the SAC.

Plaintiffs also blatantly misrepresent the OFCCP Conciliation Agreement in trying to manufacture a claim. The Court rejected Plaintiffs' reliance on the Conciliation Agreement in the FAC because it only involved certain "similar positions," which, the Court reasoned, "does not, in itself, mean that all employees holding that position performed 'equal work.'" Dkt. 52 at 9. Plaintiffs attached the Conciliation Agreement and accurately cited its "similar positions" text in the FAC. ¶¶ 32-34. Now, however, they conveniently omit the agreement from the SAC, and falsely claim that the OFCCP found variances between "substantially equal positions."[2] SAC ¶ 56. Such mischaracterization cannot save their claims.

Besides Plaintiffs' failure to cure the deficiencies exposed in the FAC, the Court also should dismiss the SAC pursuant to Rule 12(b)(6) for the other reasons discussed in AstraZeneca's motion to dismiss and strike the FAC (Dkts. 29, 40): their EPA claims (Counts I and II) are facially time-barred; and all four counts fail because they neglect to identify a *single* male "comparator," much less men across the Company, who worked in Illinois or the same "establishment" as any Plaintiff or class/collective member and who were higher paid. Even if the Court does not dismiss the SAC, it should strike Plaintiff's class and collective claims given the absolute dearth of facts plausibly supporting such complex and sweeping claims. Finally, after three futile attempts, any such dismissal or striking should be with prejudice.

---

[2]This revision is clear in the redline of the SAC against the FAC, which is attached hereto as Exhibit A.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

During the relevant time period, Plaintiffs worked in pharmaceutical sales representative roles in distinct therapeutic areas: Jirek – Level 4 Executive Respiratory Specialty Care Representative, promoted to Oncology Sales Representative; Teske – Level 4 Executive Health Systems Specialist Sales Representative, promoted to Level 4 Oncology Sales Representative; and Ledinsky – Level 4 Executive Cardiovascular Hospital Sales Representative, promoted from Level 3. SAC ¶¶ 20, 21, 24, 25, 48, 53, 59. They concede that "sales positions" have different levels, and that higher levels and certain role changes *within* levels are promotions. *Id.* They also concede that representatives work in varying specialized therapeutic areas to market *different* drugs targeted to *different* conditions and *different* disciplines of specialized providers: "Sales Representatives could have a *specialization*-such as pulmonology, cardiology, or oncology-where representatives educated *specialized medical professionals* on *specialization specific treatments*." *Id.* ¶ 37 (emphasis added); *id.* ¶ 34 (sales representatives "educate medical professionals on their *assigned treatments*.") (emphasis added). Despite their conclusory claim that training "on *how to sell a new drug*" – *i.e.*, the process of "selling" – is the same across areas, Plaintiffs tacitly concede that their training on the *substance* of these specialized drugs, therapeutic areas, and markets differs and similarly is specialized: "[representatives must] stay continuously educated on *assigned products, the market, and competitors*." *Id.* ¶¶ 35, 44 (emphasis added); *see id.* ¶¶ 34, 37.

Plaintiffs further concede that sales representatives work in assigned territories with varying sizes and types of healthcare providers: for example, Teske worked in the Chicagoland area with "Advocate Healthcare as well as oncology specialized medical professionals;" Ledinsky worked in Chicago West with "multiple hospitals" serving "Interventional Cardiologists and

---

[3]AstraZeneca accepts these SAC allegations as true solely for purposes of this Motion, and is not conceding, e.g., that Oncology representatives are "Level 4 Specialty Care Sales Representatives."

Cardiologists," as well as "community and academic institutions;" and Jirek worked in "community" and "large hospital settings." *Id.* ¶¶ 17, 21, 24, 47. Despite the Court's observation that "work[ing] with large academic medical centers or solo providers . . . would have different demands," the SAC contains no facts about the actual job duties necessary to work in such varying contexts, and simply declares that they were all "the same" and "share a common core." *Id.* ¶¶ 18, 22, 26, 36; Dkt. 52, at 8. In particular, these Chicagoland-area Plaintiffs provide no facts regarding the actual job duties of representatives who work with the diversity of "solo providers" (Dkt. 52 at 8) and other smaller providers, or who serve more rural or less populated areas across the 102 counties in Illinois (eight in this Division alone),[4] much less nationwide. SAC ¶¶ 4-5, 13, 21, 47.

Rather, as noted, Plaintiffs summarily allege that *all* sales representatives share a "common core of job duties" comprised of "contact[ing] and meet[ing] with patient-facing medical professionals; network[ing] with other pharmaceutical representatives; and stay[ing] continuously educated on assigned products, the market, and competitors." *Id.* ¶¶ 35-36, 42-45. They further allege that the qualifications for a sales position require nothing but "a bachelor's degree, a valid driver's license, and a safe driving record." *Id.* ¶ 32. Plaintiffs claim that their own "common core of job duties" did not change over their roughly 20-year careers, and that *all* sales representatives nationwide, regardless of gender, "share a common core of job duties" and a pay range structure that do not vary regardless of position, level, expertise, therapeutic specialty, type or complexity of drug sold, training, or territory. *See id.* ¶¶ 18, 22, 26, 33, 36, 37, 43-45.

The remaining SAC allegations largely track those the Court already found *insufficient*:

• <u>Comparators</u>: Plaintiffs again claim generally that men work in "the same sales positions" and Illinois counties as Plaintiffs and "throughout the country," but offer no facts as to any higher-paid

---

[4] *See* https://www.ilsos.gov/publications/illinois_bluebook/map.pdf (Ill. Sec. of State) *and* https://www.ilnd.uscourts.gov/Pages.aspx?page=PlaceinHolding (both last visited 4/13/23).

man who actually worked in Illinois or the same establishment as any woman. SAC ¶¶ 29, 31.

• <u>Teske</u>: She again does not make any specific job- or comparator-related factual allegations in the SAC beyond the sparse background above. *Id.* ¶¶ 19-21, 59.

• <u>Jirek</u>: She again alleges that, in May 2017, she was promoted to a Level 4 Oncology Sales Representative without a pay change; she was "downgraded to a Level 3 without cause" and with a pay cut; and her Level 4 role, but not her pay, was restored after she noted the change. *Id.* ¶¶ 53-55. She does not allege that *any* man moved to a Level 4 Oncology role and was paid more than her.

• <u>Ledinsky</u>: She again alleges that her "regional manager" told her around 2017 that "she was paid significantly less than male sales representatives in the same or similar sales positions, because of her sex"; told her in 2021 that she was paid less than men performing equal work and that he was not surprised by the OFCCP findings; and that he "had the ability to view the salaries of all sales employees." *Id.* ¶¶ 46, 60. She does not describe the "region" at issue, what positions these unidentified men held, or what state, county or establishments they worked in. Nor does she allege that her regional manager *actually* looked at any such data, or what, if anything, he theoretically might have reviewed. In December 2017, she was promoted to Oncology Sales Representative and was told she would be at Level 3 with lower pay due to her lack of oncology experience. *Id.* ¶¶ 47-48. In February 2018, at a "Company meeting" at an unspecified location, she "met" an unidentified male who was promoted to "the same oncology sales representative position" but kept his Level 4 role and higher pay despite lacking oncology experience. *Id.* ¶ 50. She does not allege the state, county or establishment where he worked. Her title was "changed back to a Level 4" after she raised the issue, but without a pay increase. *Id.* ¶ 52.

• <u>Conciliation Agreement</u>: Plaintiffs again allege that, in September 2021, AstraZeneca entered

into an OFCCP Conciliation Agreement (Dkt. 22-1 at 8-36) resolving allegations of pay disparities "as of October 1, 2016" as to *only two* distinct Level 3 and 4 roles – which the OFCCP analyzed separately – with respect to its "establishment located at 1800 Concord Pike, Wilmington, Delaware."[5] *Id.* at 8, 10-11, 17-18; SAC ¶¶ 56, 58. The Conciliation Agreement involved E.O. 11246 and federal contractor regulations, not the IEPA, the EPA, or any Illinois establishment. Dkt. 22-1 at 8-11. The agreement referenced "similar positions," but importantly, *not* "substantially equal positions," as Plaintiffs now claim. *Compare id.* at 10-11, § III, *with* SAC ¶ 56. Plaintiffs were Level 4 Specialty Care Sales Representatives – in different specialized areas (SAC ¶ 59) – during the OFCCP audit period from October 1, 2015, to September 30, 2016, and learned of the agreement in late 2021. *Id.* ¶¶ 56-59; Dkt. 22-1 at 6.

AstraZeneca moved to dismiss or strike Plaintiffs' Complaint on February 23, 2022, after which Plaintiffs filed the FAC rather than respond. *See* Dkts. 20-22. The Court dismissed the FAC under Rule 12(b)(6) on January 25, 2023 "[b]ecause Plaintiffs fail to sufficiently allege their job responsibilities, or those of their male comparators." Dkt. 52 at 6. Plaintiffs then filed the SAC.

## LEGAL STANDARDS

### I. <u>Motion to Dismiss.</u>

"To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis." Dkt. 52 at 4 (*citing, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). The Court accepts all well-pleaded

---

[5]AstraZeneca is not conceding any assertions in the Conciliation Agreement, which states that it is "not… an admission by Astra-Zeneca of any violation of or noncompliance with [applicable laws], nor has there been an adjudication on the merits regarding any such violation." Dkt. 22-1 at 10, ¶ 12.

facts as true and draws all reasonable inferences in the plaintiff's favor, Dkt. 52 at 4, but "labels and conclusions[] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (court need not accept "statements of law or unsupported conclusory factual allegations").

## II.   <u>Motion to Strike Class and Collective Allegations.</u>

A party may move to strike class allegations pursuant to Rules 12(f), 23(c)(1)(A) and 23(d)(1)(D). *See, e.g.*, *Arango v. Work & Well, Inc.*, 2012 WL 3023338, at *2 (N.D. Ill. July 24, 2012); *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *3-4 (N.D. Ill. Aug. 1, 2019); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014); *Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013). Per Rule 23(c)(1)(A), "[a]t an early practicable time . . . , the court must determine by order whether to certify the action as a class action." Rule 23(d)(1)(D) provides that "[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Thus, "a court may determine that class certification is inappropriate before the parties conduct class discovery." *Buonomo*, 301 F.R.D. at 295.

While generally disfavored, "[i]f the plaintiff's class allegations are facially and inherently deficient, for example, 'a motion to strike class allegations . . . can be an appropriate device to determine whether [the] case will proceed as a class action.'" *Id.* (citation omitted). Courts evaluate motions to strike class allegations "as would be appropriate for an analogous motion to dismiss under Rule 12(b)(6)." *Jones*, 2019 WL 3554374, at *4. While a court *may* strike class claims for failure to meet the Rule 23 factors, it may *independently* strike class claims irrespective of such Rule 23 factors where (as under Rule 12(b)(6)) the complaint lacks a sufficient "factual basis to state a plausible claim for relief . . . with respect to a . . . class." *See Arango*, 2012 WL 3023338,

at *2. The same principles apply to motions to strike collective action claims at the pleading stage. *See, e.g.*, *Beyer v. Michels Corp.*, 2022 WL 901524, at *9 (E.D. Wis. Mar. 28, 2022).

## III. EPA and IEPA Elements and Pleading Requirements.

To state an EPA or IEPA claim, a plaintiff must plead facts plausibly showing "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar[6] skill, effort and responsibilities, (3) that was performed under similar working conditions." 29 U.S.C. § 206(d); 820 ILCS § 112/10; *Karlo*, 2021 WL 2156438, at *3. Even where employees perform equal work, pay differentials are lawful under the EPA and IEPA when based on, *inter alia*, "any other factor other than sex." *See* 29 U.S.C. § 206(d)(1); 820 ILCS § 112/10.

Furthermore, "*the elements* of an Equal Pay Act [and thus also an IEPA] claim must be satisfied with allegations of 'specific facts,'" *Kevari v. Scottrade, Inc.*, 2018 WL 6136822, at *5 (C.D. Cal. Aug. 31, 2018) (emphasis added; citation omitted). As part of these statutory elements, the EPA and IEPA limit the employees who may be compared. The EPA "has a geographic limitation" of "the same 'establishment,'" *Toomey v. Car-X Assocs. Corp.*, 2013 WL 5448047, at *6 (N.D. Ill. Sept. 30, 2013) (citing 29 U.S.C. § 206(d)(1)), which generally means "the same geographical office, or at least the same city or metropolitan area." *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (citing 29 C.F.R. § 1620.9(a) ("each physically separate place of business is ordinarily considered a separate establishment" absent "unusual circumstances")). The IEPA allows comparisons only between employees at the same workplace in the *same Illinois county*. 820 ILCS § 112/10 ("Nothing in this Act may be construed to require an employer to pay, to any

---

[6] "[B]ecause the statutes are 'nearly identical . . . [c]laims brought under the IEPA and EPA are analyzed the same way.'" Dkt. 52 at 5 (quoting *Karlo v. St. Augustine Coll.*, 2021 WL 2156438, at *2 (N.D. Ill. May 27, 2021)); *Boyd v. City of Chicago*, 2021 WL 2012234, at *1 (N.D. Ill. May 20, 2021)).

employee at a *workplace in a particular county*, wages that are equal to the wages paid by that employer at a *workplace in another county . . .")* (emphasis added).

## ARGUMENT

### I.     Counts I and III (EPA National Collectives) Should Be Dismissed as Time-Barred.

Counts I and III under the EPA remain time-barred. The maximum EPA limitations period is three years, making any claim based on facts prior to March 16, 2019 untimely. 29 U.S.C. §§ 255(a), 256; *Karlo*, 2021 WL 2156438, at \*2; *cf.* 820 ILCS § 112/30(a) (five-year IEPA limitations period). The scant factual allegations upon which Plaintiffs rely to support this claim occurred between 2015 and 2018. *See* SAC ¶¶ 46-58; Dkt. 22-1 at 10-14. As discussed above and below, Ledinsky's sole allegation in the SAC within the limitations period – that her regional manager "had access to" payroll data, and said in 2021 that she was paid less than men "performing equal work" and he was not surprised by the OFCCP's findings – nevertheless is too vague and conclusory to plausibly allege an EPA violation in the limitations period. *See supra* at 8 and *infra* at 14-15. Count I thus must be dismissed with prejudice. *See Aboyade-Cole v. City of Chicago*, 2007 WL 9813324, at \*1 (N.D. Ill. Dec. 12, 2007).

### II.    All Counts Must Be Dismissed Because Plaintiffs Fail to Plead Equal Work, or Comparators Receiving Unequal Pay in the Same County or Establishment.

#### A.     Plaintiffs Fail to Sufficiently Plead Equal/Substantially Similar Work.

The SAC sheds no light on whether or how any sales representatives purportedly perform equal work, either across "all sales employees" or all "Level 4 Specialty Care Sales Representatives." It should be dismissed under Rule 12(b)(6) "[b]ecause Plaintiffs fail to sufficiently allege their job responsibilities, or those of their male comparators." *See* Dkt. 52 at 6. This Court offered guidance regarding factors potentially relevant to sales representatives' actual job duties, such as facts describing their work "with large academic medical centers or solo

providers, which would have different demands;" "the complexity of the therapies Plaintiffs (or their comparators) sold," such as "a straightforward cholesterol medication" versus "a medication used to treat a rare heart disease;" and "the related training or education needed to sell such products." Dkt. 52 at 8. Plaintiffs instead parrot legal standards, claiming that "the common core of their job duties" was "share[d]," "remained the same," "did not change," and "does not vary," irrespective of position, level, expertise, therapeutic specialty, type or complexity of drug sold, training, or territory. *See* SAC ¶¶ 18, 22, 26, 33, 36, 37, 42, 43-45. Such conclusions cannot support a claim. *See* Dkt. 52 at 5 (*citing McCauley v. City of Chicago,* 671 F.3d 611, 617 (7th Cir. 2011)).

Plaintiffs' allegations again defy common sense, and they plead no facts plausibly alleging that "all sales positions" perform equal work "regardless of their territory, position, or department," or specialization. SAC ¶¶ 36-37. To the contrary, they acknowledge that sales representatives have different areas of "*specialization*-such as pulmonology, cardiology, or oncology-where representatives educated *specialized medical professionals* on *specialization specific treatments.*" *Id.* ¶ 37 (emphasis added); *supra* at 4-5. And they concede that there is a wide range of providers in the Chicago area alone, from specialized oncology professionals, to Interventional Cardiologists and Cardiologists, to community institutions, academic institutions, and large hospitals. *See supra* at 4-5. Other representatives across the State and country no doubt serve additional diverse professionals and facilities, including in rural and less-populated areas, as well as "solo practitioners" whose work "would have different demands" as compared to, e.g., "large academic medical centers." *See* Dkt. 52 at 8.

As the Court's dismissal indicates, it simply is not reasonable to presume that all sales representatives – nationwide or statewide – do the same work across a complex organization with as many products, provider types, and specialty therapeutic areas as AstraZeneca. Dkt. 52 at 8; *id.*

11

at 5 ("In assessing plausibility, the Court must rely on its judicial experience and common sense." (*citing McCauley*, 671 F.3d at 616)). This is particularly true given Plaintiffs' admissions above regarding their assigned specialty areas. Notably, in *EEOC. v. Port Authority of New York and New Jersey,* 768 F.3d 247, 256-57 (2d Cir. 2014), the court rejected a similar boilerplate claim that attorneys performed equal work simply because they all used professional judgment, problem-solving and analytical skills, and recognized that their specializations likely involved manifestly different work, including different skill sets: "the EEOC's complaint provides no guidance as to whether the attorneys handled complex commercial matters or minor slip-and-falls, negotiated sophisticated lease and financing arrangements or responded to employee complaints, conducted research for briefs or drafted multimillion-dollar contracts." *See* Dkt. 52 at 8 (EPA and IEPA claims require *inter alia* substantially similar skill*). Here, as in *Port Authority*, Plaintiffs fail to "allege[] facts supporting [their] contention that the [representatives'] job duties were treated interchangeably," and concede that, as specialized professionals, they were *not* fungible. *See* 768 F.3d at 257.

Plaintiffs also contradict their own claims of equal work across "all sales positions" by contending elsewhere in the SAC that work is equal *only* in the same "level and specialty." *See* SAC ¶ 33 ("male sales representatives performed substantially equal work as Plaintiffs within their level and specialty"); *id.* ¶ 61 (comparing women to "their similarly situated (i.e., within their level and specialty) male sales employee counterparts"). While these claims are still overbroad and implausible, as discussed below, they are also important admissions that require dismissal of Counts I and III asserting a collective and class of "female employees in all sales positions." *See McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (citation omitted) (plaintiff can "ple[a]d himself out of court" in a complaint).

Nor do Plaintiffs plead facts plausibly showing "in the alternative" that work is equal even in the same "level and specialty." They concede that moving *between* roles in the *same level* can be a promotion, which alone belies any claim that there is a "common core of job duties" *within* each level. *See supra* at 2, 5. And as discussed, work within a given specialty area can involve significantly different types of markets and providers, "which would have different demands." *Id.* at 10-11; *see* Dkt. 52 at 8; *Port Auth.,* 768 F.3d at 256-57. Plaintiffs also contradict their suggestion that their "alternative" collective and class – "Level 4 Specialty Care Sales Representatives" – involve a *single* specialization or drug therapy area. They admit that as Level 4 "Specialty" representatives, they worked in many *different* Level 4 specialized areas with *different* therapies. *See supra* at 4 (Executive Respiratory Specialty Care Rep., Executive Health Systems Specialist Sales Rep., Executive Cardiovascular Hospital Sales Rep., and Oncology Sales Rep.). Plaintiffs thus "plead themselves out of court" as to Counts II and IV, including as to "female Level 4 Specialty Care Sales Representatives."

At base, the SAC merely replaces the FAC's "broad descriptions of Plaintiffs' roles" – essentially that "a salesperson is a salesperson is a salesperson" – with a nearly identical and equally deficient generalization that "a product educator is a product educator is a product educator." *See* Dkt. 52 at 8; *compare* FAC ¶ 18 (representatives "market and sell their assigned AstraZeneca products and service their respective client accounts."), *with* SAC ¶¶ 34-35 (representatives "educate medical professionals on their assigned treatments" and "contact and meet with patient-facing medical professionals; network with other pharmaceutical representatives; and stay continuously educated on assigned products, the market, and competitors"). This again is precisely the kind of "bland abstraction" and "high-level description of the responsibilities of sales employees generally" that "does not contain enough detail for the

Court to ascertain Plaintiffs' 'actual job duties.'" Dkt. 52 at 8 (*citing Port Auth.*, 768 F.3d at 256-57). As this Court noted: "These positions, although having the same title and similar job responsibilities (when viewed at a high-level), would not actually require equal work or 'substantially similar skill, effort and responsibilities.'" *Id.*

Plaintiffs' allegation as to what it takes to "get in the door" as a sales representative – "a bachelor's degree, a valid driver's license, and a safe driving record" (SAC ¶ 32) – does not illuminate what representatives actually do across levels, therapeutic areas, territories, and markets. Nor does their allegation regarding training on "on how to sell a new drug." *Id.* ¶ 44. Irrespective of whether the *process* of selling allegedly is similar (*e.g.*, meetings to "educate" providers), Plaintiffs concede, and common sense dictates, that the *substance* of the training and expertise needed to sell a complex drug in a specific therapeutic area to a specific type of provider varies widely. *See, e.g.*, *id.* ¶ 35 ("[sales representatives must] stay continuously educated on *assigned products, the market, and competitors*.") (emphasis added); *supra* at 9 (EPA and IEPA require showing of equal work requiring substantially similar skill, effort and responsibilities).

Plaintiffs' misrepresentation of the Conciliation Agreement cannot sustain their claims. As the Court found, that Agreement involved "similar positions" in *two* roles, which does nothing to show "equal work." Dkt. 52 at 9. It did not involve the EPA or IEPA, did not admit or adjudicate any violation, and falls outside the limitations periods. *See* Dkt. 22-1 at 10-11, § III. If anything, the OFCCP's role-specific analyses show that sales roles do *different* work, including across Levels. Nor can Plaintiffs rely on Ledinsky's vague allegations that her "regional manager" told her "she was paid significantly less than male sales representatives in the same or *similar sales positions*" or who performed "equal work," and that she "met" a man in 2017 from an unidentified territory who worked in the "same position" as her and "perform[ed] equal work." SAC ¶¶ 46-50,

14

60. The Court found essentially the same allegations insufficient in the FAC. Dkt. 52 at 6-9. "Same" or "similar positions" is not the EPA or IEPA standard, and a boilerplate claim of "equal work" cannot state a claim. *See supra* at 8 (conclusions insufficient). The speculative assertion that her regional manager "had the ability to view the salaries of all sales employees" is irrelevant – there are no facts indicating that he *actually* did so, who or what he theoretically could have reviewed, and the duties or locations of any such employees. *Id.*

The court in *Karlo* rejected under Rule 12(b)(6) similar claims that unnamed "male counterpoints" performed work "that required substantially similar skill, effort and responsibility . . . under similar working conditions," deeming them a "'bare recitation of the elements of an EPA or IEPA cause of action'" without describing "what their work entailed, or under what conditions they worked." 2021 WL 2156438, at *4; *see Boyd*, 2021 WL 2012234, at *1-2 (dismissing EPA and IEPA claims despite allegations of male comparators and overlapping duties where plaintiff "allege[d] no facts to support an inference that the three men at issue completed equal work") (citations omitted); *Beyer*, 2022 WL 901524, at *1, *8-9 (striking collective action pay claim for lack of facts plausibly showing collective-wide violations). Dismissal should follow here too.

**B.** **Plaintiffs Fail to Identify Any Comparator in the Same Establishment or County.**

Counts I to IV also fail because Plaintiffs plead no facts plausibly indicating that any male comparators did equal work for more pay in the same establishment or Illinois county as any female representatives. *See Kevari*, 2018 WL 6136822, at *5 ("the elements of an Equal Pay Act claim must be satisfied with allegations of 'specific facts'") (citation omitted); *supra* at 9. Plaintiffs' general allegations that men work "in the same sales positions in the same counties within Illinois" and "throughout the country" as Plaintiffs are pure conclusions, as is their speculative claim that "[u]pon information and belief, Defendant . . . has continued paying female

sales employees across all departments and across all levels throughout the country less than their similarly situated (*i.e.*, within their level and specialty) male sales employee counterparts." SAC ¶¶ 29, 31, 61, 86. Ledinsky's isolated allegation that she "met" a man at an unspecified "Company meeting" identifies neither where the meeting occurred nor where this man worked, strongly suggesting that he did not work in her establishment or State. Dkt. 52 at 5 ("In assessing plausibility, the Court must rely on its judicial experience and common sense."). Alleged vague and speculative comments by Ledinsky's regional manager also fall short for reasons noted above. *See supra* at 6, 10, 15. Counts I through IV thus should be dismissed. *See Karlo*, 2021 WL 2156438, at *4; *Boyd*, 2021 WL 2012234, at *1-2.

## III. <u>The Court Should Strike Plaintiffs' Class and Collective Claims.</u>

If this Court does not dismiss the SAC, it should strike its class and collective claims. *Arango*, 2012 WL 3023338, at *2; *Beyer*, 2022 WL 901524, at *1, 8-9. A court should require "as much factual detail and argument as may be required to show that the plaintiff has a plausible claim," particularly where "discovery is likely to be more than usually costly." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803-04 (7th Cir. 2008); *McCauley*, 671 F.3d at 616-17 (the "required level of factual specificity rises with the complexity of the claim.").

There is no factual or common-sense basis in the SAC to conclude that all "sales positions" – a vague term that would even sweep in sales managers and anyone else in "sales" who is not a pharmaceutical sales representative – or all "Level 4 Specialty Care Sales Representatives" perform substantially similar work nationwide or across Illinois; that men systematically were paid more than women for such work; or that higher-paid comparators worked in the same establishment or Illinois county as any women. Plaintiffs concede as much by hedging their bets and pleading "alternative" classes and collectives. Their broad classes and collectives threaten to sweep in women who have not suffered any injury. *See* 1 McLaughlin on Class Actions § 3:4 (17th

ed.) ("Courts have stricken class allegations where the proposed class definition was too broad and contained class members who did not have standing."); *Twombly*, 550 U.S. at 558 ("'[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'") (citation omitted); *cf. Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

Plaintiffs improperly ask this Court to extrapolate from a paucity of individual allegations by three Chicago-area Plaintiffs working in one Level, discrete therapeutic areas, and a handful of Illinois counties to wholly speculative nationwide collective and Illinois class claims. *See, e.g.*, SAC ¶ 61 ("*Upon information and belief*, Defendant . . . through this day has continued paying female sales employees *across all departments and across all levels* throughout the country less than their *similarly situated* (i.e., within their level and specialty) male sales employee counterparts.") (emphasis added).  Courts have stricken class and collective claims lacking facts plausibly showing a class or collective-wide violation. In *Arango*, for example, the court struck the plaintiff's class claims for tortious interference with prospective economic advantage because:

> [t]he plaintiff has no factual basis to state a plausible claim for relief for tortious interference for prospective economic advantage with respect to a nationwide class. For example, the TAC alleges that "it is *believed* that the putative class of employees with claims of tortious interference numbers in the hundreds of employees,"(TAC ¶ 4 (emphasis added),) with no supporting facts. The TAC further alleges conclusorily that "Work & Well intentionally, wrongfully, and/or unjustifiably interfered with each putative class member''s employment relationship with his or her employer, and by its actions induced the termination of those relationships." *Id.* ¶ 65.

2012 WL 3023338, at *3; *see id.* (rejecting plaintiff's "logical jump that is, again, not supported by any facts"); *PFT of Am., Inc. v. Tradewell, Inc.*, 1999 WL 179358, at *1-2 (S.D.N.Y. Mar. 31, 1999) (striking class allegations where plaintiff "cite[d] no facts from which it c[ould] be determined that there [was] any basis other than speculation as to whether there are other members of the class"); *Beyer*, 2022 WL 901524, at *1, 8-9 (striking collective and class action claims

17

lacking facts plausibly showing class- or collective-wide violations, including where "[t]he complaint contains very few allegations regarding what the plaintiff attempts to characterize as 'class' or 'collective' claims.").[7] Their class and collective claims thus should be stricken from the SAC.

## IV.   <u>Plaintiffs' Claims Should Be Dismissed or Stricken with Prejudice.</u>

Any dismissal or striking granted should be with prejudice. Plaintiffs have had *three* chances to plead viable claims, rendering any further attempt futile. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012) ("a district court is not required to grant [leave to amend a complaint] when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted"); *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) ("a district court may refuse leave to amend where amendment would be futile").

## CONCLUSION

For the foregoing reasons, AstraZeneca respectfully requests that the Court grant its Motion in its entirety, or, alternatively, strike Plaintiffs' class and collective action claims from the SAC, and grant Defendant such other and further relief as the Court may deem just and appropriate.

---

[7] The court in *Arango* also dismissed this class claim on the separate ground that the plaintiff could not meet Rule 23's certification requirements, 2012 WL 3023338, at *3, but plaintiff's failure to meet basic factual plausibility pleading requirements was an independent ground for dismissal. *Id.* AstraZeneca reserves all rights and arguments with respect to Rule 23 class and EPA collective certification issues but is not addressing or asking the Court to rule at this juncture on whether Plaintiffs' shell claims substantively meet those certification requirements. Plaintiffs' failure to plead facts plausibly asserting class- or collective-wide claims warrants striking of those claims without addressing certification requirements.

Dated:   April 14, 2023                          Respectfully submitted,

                                                 By: */s/ Jonathan D. Lotsoff*
                                                      Jonathan D. Lotsoff
                                                      James P. Looby
                                                      MORGAN, LEWIS & BOCKIUS LLP
                                                      110 North Wacker Drive, 28th Floor
                                                      Chicago, IL  60606
                                                      +1.312.324.1000 (phone)
                                                      +1.312.324.1001 (fax)
                                                      jonathan.lotsoff@morganlewis.com
                                                      james.looby@morganlewis.com
                                                      ATTORNEYS FOR DEFENDANT ASTRAZENECA
                                                      PHARMACEUTICALS LP

                                                      Andrea N. Threet (admitted pro hac vice)
                                                      MORGAN, LEWIS & BOCKIUS LLP
                                                      1111 Pennsylvania Avenue, NW
                                                      Washington, DC  20004
                                                      +1.202.739.3000 (phone)
                                                      +1.202.739.3001 (fax)
                                                      andrea.threet@morganlewis.com

CERTIFICATE OF SERVICE

I, Jonathan D. Lotsoff, an attorney, hereby certify that on April 14, 2023, I caused a copy of the foregoing **Memorandum of Law in Support of Defendant's Motion to Dismiss and Strike Plaintiffs' Second Amended Complaint** to be filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

*/s/      Jonathan D. Lotsoff*
Jonathan D. Lotsoff

20