UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATALIE JIREK, NANCY LEDINSKY, and JUDY TESKE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS LP, <br><br> Defendant. | No. 21 C 6929 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiffs Natalie Jirek, Nancy Ledinsky, and Judy Teske bring this collective action on behalf of themselves and similarly situated individuals against Defendant AstraZeneca Pharmaceuticals L.P. ("AstraZeneca"), alleging that AstraZeneca paid female sales employees less than their male counterparts for the same work in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and the Illinois Equal Pay Act ("IEPA"), 820 Ill. Comp. Stat. 112/1 *et seq.* The Court granted AstraZeneca's motion to dismiss Plaintiffs' first amended complaint and gave Plaintiffs leave to amend. Doc. 52. AstraZeneca now asks the Court to dismiss with prejudice Plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to strike the collective and class allegations pursuant to Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D). However, because Plaintiffs have corrected the deficiencies the Court identified in its original decision and factual questions relevant to the collective and class allegations exist, the Court denies AstraZeneca's motions.

1

# BACKGROUND[1]

## I. Procedural History

Plaintiffs filed their original complaint on December 30, 2021, alleging only that AstraZeneca violated the IEPA. They filed their first amended complaint on March 16, 2022, which added their EPA allegations. The Court dismissed the first amended complaint on AstraZeneca's motion after finding that Plaintiffs "fail[ed] to sufficiently allege their job responsibilities, or those of their male comparators." Doc. 52 at 6. The Court faulted Plaintiffs' "broad descriptions of [their] roles," *id.* at 8, such as "market[ing] and sell[ing] their assigned AstraZeneca products and servic[ing] their respective client accounts," Doc. 22 ¶ 18, and rejected the "salesperson is a salesperson is a salesperson" allegations they set out in the first amended complaint. Doc. 52 at 8. But the Court also gave Plaintiffs leave to amend and provided guidance on what allegations could help them survive a second motion to dismiss:

> For instance, based on the Complaint, the Court does not know whether Plaintiffs (or their comparators) worked with large academic medical centers or solo providers, which would have different demands. As a further example, the Complaint does not state the complexity of the therapies Plaintiffs (or their comparators) sold, and the related training or education needed to sell such products. A Level 4 Cardiology Sales Representative, one of the positions formerly held by Ledinsky, for instance, could be tasked with selling a straightforward cholesterol medication, while another Level 4 Cardiology Sales Representative may be tasked with selling a medication used to treat a rare heart disease.

*Id.* Plaintiffs subsequently filed their second amended complaint on March 10, 2023, which AstraZeneca has now moved to dismiss.

---

[1] The Court takes the facts in the background section from Plaintiffs' second amended complaint and the exhibit attached thereto and presumes them to be true for the purpose of resolving AstraZeneca's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

## II. Plaintiffs' Second Amended Complaint

The Court assumes the parties' familiarity with the core factual allegations of Plaintiffs' second amended complaint, which are largely consistent with those included in the first amended complaint. *See id.* at 2–4. To briefly reprise, Plaintiffs, all women, allege that AstraZeneca systemically underpaid its female sales representatives compared to male sales representatives performing essentially equal work. Plaintiffs worked as sales representatives in AstraZeneca's Illinois offices alongside male colleagues. At times, Ledinsky and Jurek were each "promoted" to more lucrative sales positions, but AstraZeneca reduced their pay, citing inexperience. AstraZeneca did not lower the salaries of Ledinsky's and Jurek's newly-promoted male colleagues, despite them having similar levels of experience as Ledinsky and Jurek. Ledinsky, in particular, was concerned about her compensation and had conversations in 2017 and 2021 with her manager, Derrik Winson, who had access to salary information. On each occasion, he informed Ledinsky that AstraZeneca paid her significantly less than her male colleagues performing equal work.

Further, a conciliation agreement between the Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") and AstraZeneca ("the OFCCP report") found that AstraZeneca underpaid over 300 female sales representatives in certain sales positions compared to their similarly situated male colleagues between October 1, 2015, and September 30, 2016. Specifically, with respect to a set of 295 women, the OFCCP report found that AstraZeneca underpaid them by an average of $2,182.07 during the report's period, and that difference in sex was the only reason for the discrepancy. Plaintiffs allege that female underpayment was endemic throughout *all* of AstraZeneca's sales positions (rather than just the ones analyzed in the report); that AstraZeneca failed to adjust female sales representative pay to align it with their

3

male counterparts in the aftermath of the OFCCP report; and that AstraZeneca continues to underpay its female sales representatives through today.

Plaintiffs added several important factual allegations in their second amended complaint related to their job duties as sales representatives. They allege that "[a]ll sales representatives regardless of their territory, position, or department, share a common core of job duties," which were "to contact and meet with patient-facing medical professionals; network with other pharmaceutical representatives; and stay continuously educated on assigned products, the market, and competitors." Doc. 55 ¶¶ 35–36. Because Plaintiffs each worked in various sales positions throughout their careers, they state that their "common core of . . . job duties remained the same throughout [their] employment with [AstraZeneca]." *Id.* ¶¶ 18, 22, 26. Not only were their duties uniform over time, but they were also consistent across sales representative positions regardless of compensation plan, specialization or therapeutic area, territory, type or complexity of drug sold, and geographic or sociological composition of the sales representative's territory. *Id.* ¶¶ 37, 42–45. Plaintiffs also allege that "male sales representatives performed substantially equal work as Plaintiffs within their level and specialty" and that they "did not have additional tasks or job duties." *Id.* ¶ 33.

In addition to their individual claims, Plaintiffs bring collective (EPA) and class (IEPA) claims on behalf of similarly situated female employees. Depending on the statutory basis for their claim, Plaintiffs propose a collective or class of "[a]ll females employed by AstraZeneca in sales position," or alternatively "[a]ll females employed by AstraZeneca in Level 4 Specialty Care Sales Representative positions." *Id.* ¶¶ 65, 74.

4

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

Plaintiffs bring the same claims under the federal and Illinois versions of the EPA as they did in their first amended complaint. As the Court noted in its first opinion, both statutes prohibit wage discrimination on the basis of sex. 29 U.S.C. § 206(d)(1); 820 Ill. Comp. Stat. 112/10; *see also Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000) ("The Equal Pay Act . . . forbids paying workers of one sex less than workers of the opposite sex for equal work that requires equal skill, effort, and responsibility, unless the pay differential is justified by factors other than sex, such as seniority, merit, experience, or education."). Because the statutes are "nearly identical . . . [c]laims brought under the IEPA and EPA are analyzed the same way." *Karlo v. St. Augustine Coll.*, No. 20 C 5084, 2021 WL 2156438, at *2 (N.D. Ill. May 27, 2021).

5

AstraZeneca argues that Plaintiffs' EPA allegations are time-barred; that Plaintiffs have failed to plausibly allege violations of the EPA and IEPA; and that, in the alternative, the Court should strike Plaintiffs' class and collective claims.

## I. Statute of Limitations

Because Plaintiffs allege that AstraZeneca willfully violated the EPA, *see* Doc. 55 ¶ 63, a three-year statute of limitations applies. 29 U.S.C. § 255(a). Plaintiffs only seek relief under the EPA from December 30, 2018—three years to the day before they filed their original complaint—until the present. *See* Doc. 55 at 15, 16. AstraZeneca argues that Plaintiffs' "scant factual allegations . . . to support [their EPA] claim[s] occurred between 2015 and 2018," falling outside the limitations period.[2] Doc. 69 at 10. Plaintiffs respond that their allegations relating to AstraZeneca's pre-December 30, 2018 conduct is merely evidence for their wage claims, and that their challenge to AstraZeneca's pay structure within the statutory period is entirely appropriate. Doc. 71 at 6 ("Regardless, 'evidence of wage discrimination need not be confined to the EPA's . . . limitation period . . . for a court may consider relevant evidence from before that period while assessing the worker's claims.'" (quoting *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011))).

"[W]here a defendant raises the statute of limitations as an affirmative defense at the motion to dismiss stage, a court can only dismiss a claim 'when the complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Jovic v. L-3 Servs., Inc.*, 69 F. Supp. 3d 750, 765 (N.D. Ill. 2014) (quoting *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008)). "This is because a complaint need not anticipate nor overcome

---

[2] The IEPA contains a five-year statute of limitations. *See* 820 Ill. Comp. Stat. 112/30. AstraZeneca, however, has not moved to dismiss Plaintiffs' IEPA claims on this basis, *see* Doc. 69 at 10; *see also* Doc. 72 at 6 n.2, so the Court limits its discussion in this section to the EPA.

affirmative defenses, including one based on the relevant statute of limitation." *Id.* (citing *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)).

Here, the second amended complaint does not plainly reveal that the EPA claims are "untimely under the governing statute of limitations." *Andonissamy*, 547 F.3d at 847. True, the only events that Plaintiffs allege happened after December 30, 2018 are the release of the OFCCP report and Ledinsky's subsequent conversation with her manager. *See* Doc. 55 ¶¶ 56– 60. But Plaintiffs further claim that AstraZeneca "did not alter its pay practices following the initiation of the DOL's OFCCP investigation, and through this day has continued paying female sales employees across all departments and across all levels throughout the country less than their similarly situated . . . male sales employee counterparts." *Id.* ¶ 61. This ties the pre-statute of limitations events to violations of Plaintiffs' rights lasting through the present day. Accordingly, the Court cannot say at this stage that Plaintiffs' allegations are so obviously untimely that the statute of limitations bars their EPA claims. *See Andonissamy*, 547 F.3d at 847.

**II.      Plaintiffs' EPA and IEPA Allegations**

To successfully bring a claim, Plaintiffs must plausibly allege that: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (citation omitted). As noted in the Court's prior ruling, Plaintiffs' second amended complaint must contain more than "legal conclusions or conclusory allegations," and the allegations must "plausibly suggest an entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Though Plaintiffs must clear a lower factual bar at the motion to dismiss stage than if they were facing a motion for summary judgment, they still must provide "enough facts to raise a reasonable expectation that discovery will reveal

7

evidence supporting the allegations." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015). The Court must rely on its judicial experience and common sense when evaluating Plaintiffs' claims. *See, e.g.*, *McCauley*, 671 F.3d at 616 ("Making the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

AstraZeneca contends that Plaintiffs failed to sufficiently plead that they perform substantially similar work as their male colleagues, and failed to identify any male comparator performing equal work for more pay in the same establishment or Illinois county. The Court considers these objections in turn.

A. **Equal Work**

To determine whether Plaintiffs' work and "the work that a male employee did [were equal], 'the crucial inquiry is whether the jobs to be compared have a common core of tasks; i.e., whether a significant portion of the two jobs is identical.'" *Jaburek*, 813 F.3d at 632 (quoting *Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003) (original insertions omitted)). The second amended complaint alleges that "[a]ll sales representatives regardless of their territory, position, or department, share a common core of job duties," which were "to contact and meet with patient-facing medical professionals; network with other pharmaceutical representatives; and stay continuously educated on assigned products, the market, and competitors." Doc. 55 ¶¶ 35–36. AstraZeneca argues that it is implausible that all of their sales representatives would have identical job duties "irrespective of position, level expertise, therapeutic specialty, type or complexity of drug sold, training, or territory." Doc. 69 at 11. Plaintiffs respond that these factual allegations go above and beyond those which the law requires them to plead. *See* Doc. 71 at 9–11.

8

Plaintiffs' amendments to their complaint sufficiently answered the Court's questions that led to its initial finding that their claims were not plausible. In its first opinion granting AstraZeneca's motion to dismiss, the Court gave Plaintiffs some drafting notes:

> For instance, based on the Complaint, the Court does not know whether Plaintiffs (or their comparators) worked with large academic medical centers or solo providers, which would have different demands. As a further example, the Complaint does not state the complexity of the therapies Plaintiffs (or their comparators) sold, and the related training or education needed to sell such products. A Level 4 Cardiology Sales Representative, one of the positions formerly held by Ledinsky, for instance, could be tasked with selling a straightforward cholesterol medication, while another Level 4 Cardiology Sales Representative may be tasked with selling a medication used to treat a rare heart disease.

Doc. 52 at 8. In raising these points, the Court drew on its judicial experience and common sense that these factors could be relevant to the kind of work sales representatives perform. *See McCauley*, 671 F.3d at 616. But the Court is not a sales representative; its judicial experience only allows it to prod at apparent weak points in Plaintiffs' complaint and see if they give way, and its common sense merely extends to asking questions that might lead to more satisfying answers. Accordingly, when the Court asks Plaintiffs if a sales representative's job duties change under different circumstances, such as "the complexity of the therapies . . . sold," Doc. 52 at 8, and Plaintiffs answer "no", *see* Doc. 55 ¶ 44 ("The common core of job duties does not vary based on the type or complexity of the drugs being sold."), the Court must, for now, accept that as true. *See Kubiak*, 810 F.3d at 480–81 (courts must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.").

Turning to the allegations in Plaintiffs' second amended complaint, the Court finds that they have sufficiently pleaded that they performed equal work as their male colleagues. Plaintiffs claim that "[t]he common core of job duties was to contact and meet with patient-

9

facing medical professionals; network with other pharmaceutical representatives; and stay continuously educated on assigned products, the market, and competitors." Doc. 55 ¶ 35. They further allege that this common core was the same "regardless of [a sales representative's] territory, position, or department," *id.* ¶ 36, "if a sales representative worked in a specialization," *id.* ¶ 37, and regardless of "the type or complexity of the drugs being sold," *id.* ¶ 45. Moreover, "[m]ale sales representatives did not have additional tasks or job duties compared with" AstraZeneca's female sales representatives. *Id.* ¶ 33. These allegations suffice at this stage to show that male and female sales representative performed "equal work" for the purposes of the EPA. *Jaburek*, 813 F.3d at 632.

*E.E.O.C. v. Port Authority of N.Y and N.J.*, 768 F.3d 247 (2d Cir. 2014), which this Court found persuasive in its original decision, does not counsel dismissal now that Plaintiffs have amended their complaint. In *Port Authority*, the EEOC alleged "that the Port Authority required all of its nonsupervisory attorneys to have similar 'experience, training, education, or ability,' bar admission, and the capacity to call upon 'problem-solving and analytical skills' as well as 'professional judgment.'" *Id.* at 256–57. The Second Circuit recognized that these "bland abstractions" of job duties did not actually describe the work what the Port Authority's attorneys performed. In analyzing the first amended complaint, the Court faulted Plaintiffs for asking it to "accept broad descriptions" of their roles, Doc. 52 at 8, such as "market[ing] and sell[ing] their assigned AstraZeneca products and servic[ing] their respective client accounts." Doc. 22 ¶ 18. By contrast, in their second amended complaint, Plaintiffs allege that their job duties were "to contact and meet with patient-facing medical professionals; network with other pharmaceutical representatives; and stay continuously educated on assigned products, the market, and competitors." Doc. 55 ¶ 35. These are not particularly well-seasoned descriptions, but they are

10

at least above the "bland abstractions" that this Court faulted in dismissing Plaintiffs' first amended complaint.

Indeed, comparing the allegations in Plaintiffs' second amended complaint with two of the cases AstraZeneca cites in favor of dismissal show how Plaintiffs have met their burden at this stage. For example, AstraZeneca argues that the Court should follow the court's decision in *Kevari v. Scottrade, Inc.*, No. 18 C 819, 2018 WL 6136822, at *5 (C.D. Cal. Aug. 31, 2018). The complaint in *Kevari* contained "a formalistic recitation of [an EPA claim's] elements in her Second Amended Complaint without any supporting factual allegations." *Id.* at *5. While such barebones pleading is obviously insufficient, as discussed above, Plaintiffs here have at least pleaded that they performed equal work as their male sales colleagues and were unequally compensated for their efforts. Nor does *Karlo*, 2021 WL 2156438, support the outcome that AstraZeneca desires. In that case, when a professor complained of wage discrimination, the court dismissed her complaint because it could not discern "from the Complaint whether ["unnamed 'male counterpoints'"] were faculty members, how much they were paid, what their work entailed, or under what conditions they worked." *Id.* at *4. By contrast, Plaintiffs here have pleaded that (1) female sales representatives (2) have been paid less than men for (3) a common core of job duties across all sales positions that (4) are unchanging regardless of their territory, specialty, type of drug, or training. That is sufficient. *See Jaburek*, 813 F.3d at 632.

    **B.**    **Male Comparator**

AstraZeneca also argues that Plaintiffs' failure to allege specific male comparators performing "equal work for more pay in the same establishment or Illinois county as any female representatives" warrants dismissal of their claims. Doc. 69 at 15 (citing *Kevari*, 2018 WL 6136822, at *5 ("the elements of an Equal Pay Act claim must be satisfied with allegations of

11

'specific facts'")). This argument takes aim at the EPA's requirement that the work took place in "the same geographical office, or at least the same city or metropolitan area." *Jaburek*, 813 F.3d at 632 (citing 29 C.F.R. § 1620.9(a) (stating that "each physically separate place of business is ordinarily considered a separate establishment")). Plaintiffs do not specifically address this argument.

Nonetheless, two of Plaintiffs' allegations, along with an inference drawn in their favor, satisfy the EPA's establishment requirement at this stage. *See Kubiak*, 810 F.3d at 480–81. The Court must accept as true Plaintiffs' statements that "[t]hroughout their employment, Plaintiffs and members of the Plaintiff Class worked in various counties throughout Illinois," and that "[a]t all relevant times, Defendant employed male sales representatives in the same sales positions in the same counties within Illinois as Plaintiffs." Doc. 55 ¶¶ 28–29. The Court can reasonably infer that Plaintiffs worked in the same establishment as some of these male sales representatives. This satisfies the EPA's establishment requirement at this stage. *See Jaburek*, 813 F.3d at 632.

The Court also notes that it has been unable to find a case that requires Plaintiffs to plead a specific male comparator at the motion to dismiss stage (and further observes that AstraZeneca has not brought one to the Court's attention). While Plaintiffs will have to put forward actual evidence at later stages, including specific details about male comparators, now is not the time. *See Goodman v. Nat'l Sec. Agency*, 621 F.3d 651, 657 (7th Cir. 2010) (holding that plaintiff's failure to put forward evidence at summary judgment of "what [the male employees'] duties were, when they started work, where they worked, and what their backgrounds were" warranted judgment in defendant's favor).

12

The Court finds that Plaintiffs have plausibly alleged violations of the EPA and the IEPA, allowing their claims to proceed. *See Iqbal*, 556 U.S. at 678.

### III. Class and Collective Claims

Depending on the statutory basis for each respective claim, Plaintiffs propose a collective (EPA) or class (IEPA) of "[a]ll females employed by AstraZeneca in sales position," or alternatively "[a]ll females employed by AstraZeneca in Level 4 Specialty Care Sales Representative positions." Doc. 55 ¶¶ 65, 74. AstraZeneca moves to strike these allegations.[3]

To obtain class certification under Rule 23, a plaintiff must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Under Rule 23(c)(1)(A), the Court must determine whether to certify a class "[a]t an early practicable time," and Rule 23(d)(1)(D) provides the Court with the ability to strike class action allegations from a complaint. Motions to strike class allegations at the pleading stage are appropriate where it is clear from the pleadings that the class claims are defective. *See Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("[A] court may deny class certification even before the plaintiff files a motion requesting certification."). But if the issues concerning class certification

---

[3] "A collective action is similar to, but distinct from, the typical class action brought pursuant to Fed. R. Civ. P. 23. "The principal difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). "To bring a collective action, the plaintiff must be 'similarly situated' to the putative class members." *Pearl v. Clearlink Partners, LLC*, 546 F. Supp. 3d 32, 35 (D. Mass. 2021) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Given that "the case law has largely merged the standards [between collective and class actions], though with some terminological differences," and because the parties discuss the collective and class claims as if they are identical, the Court will apply the same standard when evaluating AstraZeneca's motion to strike. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013).

are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). Unlike with a motion for class certification, on a motion to strike class allegations, the defendant, as the movant, bears the burden of persuasion. *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015).

AstraZeneca argues that it is implausible that all women working in "sales positions" or as "Level 4 Specialty Care Sales Representatives" "perform[ed] substantially similar work nationwide or across Illinois; that men systematically were paid more than women for such work; or that higher-paid comparators worked in the same establishment or Illinois county as any women." Doc. 69 at 16. AstraZeneca claims that the collective and class definitions "threaten to sweep in women who have not suffered any injury" and point to several cases where courts struck collective and class claims for want of sufficient factual allegations. *Id.* at 16–19 (citing *Arango v. Work & Well, Inc.*, No. 11 C 1525, 2012 WL 3023338, at *2 (N.D. Ill. July 24, 2012), *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 C 6413, 1999 WL 179358, at *1–2 (S.D.N.Y. Mar. 31, 1999), and *Beyer v. Michels Corp.*, No. 21 C 514, 2022 WL 901524, at *9 (E.D. Wis. Mar. 28, 2022)). In response, Plaintiffs note their allegations "that they performed substantially similar duties in all of the various positions they held while working for Defendant;" "that all sales positions are subject to the same pay structure;" that the "OFCCP's investigation concluded that while occupying one of those sales positions with Defendant, Plaintiffs were underpaid based on their sex;" and "that the discriminatory pay structure did not change following their investigation." Doc. 71 at 14–15 (citing Doc. 55 ¶¶ 18, 22, 26, 38, 56–59, 61). Plaintiffs also argue that all the cases AstraZeneca cites are distinguishable from the one at bar.

Because AstraZeneca has not met its burden of persuasion, the Court will allow Plaintiffs to take discovery to resolve factual questions regarding the collective and class claims. The OFCCP report's findings combined with Plaintiffs' individual allegations raise sufficient factual questions to preclude this Court from striking the allegations at this time. *See Buonomo*, 301 F.R.D. at 295. For example, although AstraZeneca is correct that the OFCCP report did not find that AstraZeneca violated the EPA *per se*, *see* Doc. 72 at 14–15, the report's findings speak directly to whether AstraZeneca underpaid women compared to similarly situated men, which is the very subject the EPA addresses. The OFCCP report found that "on average AstraZeneca paid 295 women $2,182.07 less than 228 men" working as Level 4 Specialty Care Representatives, and "that these differences in pay were based on sex." Doc. 22-1 at 10. The report found similar violations ("based on sex, race, and national origin") with respect to Hispanic women working as Level 3 Primary Care Sales Representatives. *Id.* at 10–11. Plaintiffs' second amended complaint adds allegations (taken as fact at this stage) that AstraZeneca underpaid women relative to their male counterparts in other Level 4 sales positions as well. *See* Doc. 55 ¶¶ 20–21, 24. These points raise significant factual questions as to the potential scope of any collective or class definition, which are especially important given that a collective action requires members to opt-in. *See Alvarez*, 605 F.3d at 448.

Moreover, although AstraZeneca is likewise correct that the OFCCP's findings cover AstraZeneca's conduct only from October 2015 until September 2016, which is outside the statute of limitations, Plaintiffs allege facts that tie the OFCCP report's findings to actionable conduct. For example, Plaintiffs point to Ledinsky's 2017 and 2021 conversations with Winston, her manager, that indicate she was underpaid compared to male colleagues for the duration of this period. *See* Doc. 55 ¶¶ 46, 60. Plaintiffs also allege that AstraZeneca "did not alter its pay

15

practices following the initiation of the DOL's OFCCP investigation" and continues to underpay female employees through the present. *Id.* ¶ 61. Furthermore, the OFCCP report identified a total of 318 women during the audit period who experienced pay discrimination. *See* Doc. 22-1 at 10–11. Taken together, these allegations and facts raise further questions relevant to collective and class certification as to whether disparate pay continued beyond the 2015–2016 period and impacted more than the 318 women working as Level 4 Specialty Care Representatives and Level 3 Primary Care Sales Representatives the OFCCP report identified. These questions caution the Court against striking the collective and class claims. *See Buonomo*, 301 F.R.D. at 295.

With these facts, allegations, and questions in mind, it becomes clear that the cases AstraZeneca points to in support of its motion to strike lack persuasive force. In *Arango*, the court found that the plaintiff's mere belief that a national class existed, "with no supporting facts," did not allow the plaintiff to embark on "the ultimate fishing expedition." 2012 WL 3023338, at *2 (quoting *Pruitt v. City of Chicago*, No. 03 C 2877, 2004 WL 1146110, at *4 (N.D. Ill. May 20, 2004)). Here, the Court has identified several facts and non-conclusory allegations that Plaintiffs have pleaded that raise factual questions precluding the Court from dismissing the collective and class claims at this stage. In *Tradewell*, the court faulted the plaintiff's failure "to identify a single member of the purported class other than itself" and "to conduct an investigation to determine if there are other class members before filing this action." 1999 WL 179358, at *1. Plaintiffs' second amended complaint in this case, with the benefit of the OFCCP report, is clearly distinguished. Lastly, in *Beyer*, the court struck the plaintiff's class allegations regarding pre-shift overtime and improperly paid bonuses after she failed to allege "that there was a uniform policy . . . that applied to" all employees and further failed to allege

16

"that other employees weren't properly compensated." 2022 WL 901524, at *9. Here, although Plaintiffs' class allegations do not abound with detail, they at least plead that AstraZeneca had a uniform policy of underpaying female employees relative to their male colleagues. *See* Doc. 55 ¶ 68. Given the factual questions the Court has identified, and the unpersuasive nature of the case law AstraZeneca cites, the Court finds that AstraZeneca has failed to meet its burden of persuasion that would allow the Court to strike the collective and class claims. *See Buonomo*, 301 F.R.D. at 295; *Rysewyk*, 2015 WL 9259886, at *8. The parties may revisit these issues when Plaintiffs ask the Court to certify a collective or class action.

## CONCLUSION

The Court denies AstraZeneca's motion to dismiss Plaintiffs' second amended complaint and alternative motion to strike the class and collective claims [68].

Dated: October 17, 2023

SARA L. ELLIS
United States District Judge